IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 05 195 S |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. |
| BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP, ET AL. | ) | |
| Defendants. | ) | |

COMPLAINT

The United States of America ("United States"), by authority of the Attorney General of the United States and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

1. This is a civil action brought pursuant to Sections 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607. The United States seeks to recover costs that have been or will be incurred in connection with the release or threatened release of hazardous substances at or from a site known as the Centredale Manor Restoration Project Superfund Site located south of Route 44 on the eastern bank of the Woonasquatucket River, in North Providence, Rhode Island ("the Site").

JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, 42 U.S.C. §§ 9607(a) and 9613(b).

(1)

3. Venue is proper in this district pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b), as the actual or threatened release of hazardous substances that gives rise to the claim occurred in this judicial district.

DEFENDANTS

4. The defendant, Brook Village Associates Limited Partnership ("Brook Village"), is a partnership organized and existing under the laws of the State of Massachusetts. Its principal place of business is located in Boston, Massachusetts.

5. The defendant, Centerdale[1] Manor Associates ("Centerdale Manor"), is a partnership organized and existing under the laws of the State of Rhode Island. Its principal place of business is located in Canton, Massachusetts.

SITE DESCRIPTION AND FACTUAL BACKGROUND

6. The source area of the Site covers approximately 9 acres located at 2072 and 2074 Smith Street, North Providence, Rhode Island. The Woonasquatucket River borders the Site and the floodplain of the river is within the Site. The major source area of the Site covers approximately 9 acres and includes 2072 and 2074 Smith Street, North Providence, Rhode Island. The Site extends along the floodplain of the Woonasquatucket River from the major source area to the Lyman Mill Dam.

7. Atlantic Chemical Company, a chemical manufacturer, began operating on a portion of the Site in approximately 1940. After a series of name changes, the company ceased operations in the early 1970s. New England Container Company ("NECC") operated a drum

---

1/ The spelling of the Superfund Site and the Defendant is slightly different. The Superfund Site is spelled "Centredale" and the Defendant's name is spelled "Centerdale."

reconditioning facility on a portion of the Site from approximately 1952 to 1971. A fire in the early 1970s destroyed most of the structures at the Site.

8. In October 1976, Brook Village purchased a 3.5 acre parcel on the Site, located at 2072 Smith Street in North Providence, Rhode Island, on which the chemical company had previously operated. Brook Village started construction of an apartment building in 1976 and completed construction in 1977. Brook Village is the current owner of a Section 8 affordable housing apartment building for about 100 elderly residents and has provided affordable housing for more than 100 elderly residents since 1977.

9. In March 1982, Centerdale Manor purchased a 5.4 acre parcel on the Site, located at 2074 Smith Street in North Providence, Rhode Island, on which the barrel company had previously operated. Centerdale Manor started construction of an apartment building in 1982 and completed construction in 1983. Centerdale Manor is the current owner of a Section 8 affordable housing apartment building for about 130 residents and has provided affordable housing for more than 130 elderly residents since 1983 .

10. In 1996, EPA discovered hazardous substances including polychlorinated biphenyls, mercury, antimony, arsenic, chromium, lead, manganese and dioxin in soil, wetlands and flood plain samples at the Site.

11. In January 1999, EPA initiated a removal action which included sampling and placing temporary fencing around contaminated surface soil. Thereafter, EPA performed additional removal actions including Site clearing; sampling activities; the erection of permanent fencing and community outreach. In September 1999, EPA issued an action memorandum that

further authorized the funding and implementation of a flood evaluation study and the design and construction of two interim soil caps.

12. Beginning in 1999, EPA sent general notice letters to Brook Village and Centerdale Manor and three other Potentially Responsible Parties ("PRPs"). EPA requested that all five PRPs voluntarily perform or finance time-critical removal activities at the Site. On April 12, 2000, EPA issued a Unilateral Administrative Order to five PRPs (including Brook Village and Centerdale Manor), ordering the parties to complete time-critical removal activities at the Site comprised of completion of the second interim soil cap and implementation of certain flood control measures. All five PRPs complied with the UAO. EPA approved the PRPs' Completion of Work Report on September 11, 2000.

13. In July 1999, EPA began a remedial investigation/feasability study ("RI/FS") for the Site. EPA expects to issue the draft Remedial Investigation report in the Spring, 2005, and EPA is in the process of preparing the Feasibility Study, a draft of which is expected in the Fall, 2005. EPA expects to issue the Record of Decision in 2006 through which EPA will select a remedial action to address the release or threatened release of hazardous substances at or from the Site.

14. In February 2000, EPA issued a letter to Brook Village, Centerdale Manor and three other PRPs requesting that they voluntarily perform or finance an Engineering Evaluation and Cost Analysis ("EE/CA") for a portion of the Site. The parties did not prepare the EE/CA. As a result, EPA prepared the EE/CA.

15. In March 2001, the Site was placed on the National Priorities List ("NPL"), 40 C.F.R. Part 300, Appendix B, pursuant to Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

Sites on the NPL are those that EPA has determined present the greatest danger to public health, welfare, or the environment, and are eligible for long-term remedial action financed with funds from the Hazardous Substance Superfund, commonly referred to as the "Superfund", 42 U.S.C. § 9611.

16. On March 26, 2001, EPA issued a second Unilateral Administrative Order to Brook Village and Centerdale Manor and three other PRPs ordering these parties to perform the work set forth in the EE/CA. The PRPs have almost completed this work.

17. In September 2003, EPA issued an Administrative Order on Consent ("AOC") requesting that Brook Village, Centerdale Manor and three other PRPs, plus five additional PRPs, perform a second time-critical removal action consisting generally of the reconstruction of the tailrace[2], including control of storm drain runoff and sedimentation entering the tailrace, and construction and maintenance of a protective cap over the tailrace area. In October 2003, EPA issued a unilateral administrative order to two PRPs that declined to sign the September 2003 AOC and ordered these parties to participate and cooperate with the respondents to the AOC.

18. There was a "release" or "threatened release" of a hazardous substance at or from the Site within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

19. The actions taken by the United States in connection with the Site constitute "response" actions within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25). The United States has incurred over $14.5 million in unreimbursed costs at the Site.

<u>CLAIM FOR RELIEF</u>

---

2/ A tailrace is a channel used for floating away milling or mining refuse.

20. Paragraphs 1 through 19 are realleged and incorporated herein by reference.

21. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in pertinent part:

> (1) the owner or operator of a vessel or facility;
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at a facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such persons, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for --
>
> (A) all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the national contingency plan; . . .

22. Each of the Defendants is liable, pursuant to Section 107(a)(1), 42 U.S.C. § 9607(a)(1), as the current owner of the Site.

23. Each of the Defendants is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

24. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

25. The response costs incurred by the United States in connection with the Site were not inconsistent with the National Contingency Plan ("NCP"), which was promulgated

under Section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and is codified at 40 C.F.R. Part 300, et seq.

26. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Defendants are jointly and severally liable to the United States for costs incurred or to be incurred by the United States in connection with the Site, for which the United States seeks judgment, including prejudgment interest.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, United States of America, respectfully prays that this Court:

1. Enter judgment against each of the Defendants, jointly and severally, for response costs incurred or to be incurred by the United States in connection with the Site, together with interest thereon;

2. Award such other relief as this Court deems just and proper.

Respectfully submitted,

KELLY A. JOHNSON
Acting Assistant Attorney General
Environmental and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

HENRY S. FRIEDMAN
Senior Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

ROBERT CLARK CORRENTE
United States Attorney

By: ______________________
LUIS MATOS
Assistant United States Attorney
District of Rhode Island
Fleet Center, 50 Kennedy Plaza, 8th Floor,
Providence, Rhode Island 02903

OF COUNSEL:

EVE VAUDO
Enforcement Counsel
U.S. Environmental Protection Agency
New England Region
JFK Federal Building
Boston, Ma. 02203-2211