IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP, ET AL. Defendants. | CIVIL ACTION NO. 05-195S |

**BROOK VILLAGE'S
MEMORANDUM IN SUPPORT OF
UNITED STATES' MOTION FOR ENTRY OF CONSENT DECREE**

Defendant Brook Village Associates Limited Partnership ("Brook Village") submits this memorandum in support of the motion by the United States for Entry of Consent Decree. As demonstrated by the government's moving papers, entry of the consent decree is fair, reasonable, consistent with the goals of CERCLA, and in the public interest. Not only does the proposed settlement agreement generate substantial funds towards the clean-up of the Centerdale Manor Superfund Site (the "Site"), but it preserves 101 units of affordable elderly housing provided by Brook Village, for which there is an urgent local need.[1]

Brook Village supports, and will not repeat here, the arguments made by the United States that the settlements are appropriately based on equitable and public policy considerations arising from the fact that the Settling Defendants came to the Site after all industrial activity had ceased and are operators of subsidized low-income housing for the elderly. Nor will it re-canvas

[1] The government's parallel agreement with the other Settling Defendant, Centredale Manor, will involve an additional 122 units of affordable housing for the elderly, allowing 223 units to be preserved through entry of the Consent Decrees.

the government's showing that the settlements are based on the Settling Parties' limited ability to pay as determined by a qualified financial analyst hired by EPA and based on the financial analysis performed by the Rhode Island Housing and Mortgage Finance Corporation ("Rhode Island Housing").

Brook Village submits this memorandum to provide additional detail concerning its innocent landowner defense, referred to by the United States as an additional reason for the government to enter into the Consent Decree. United States Memorandum, pages 16 and 17. Brook Village, while cooperating with EPA's clean-up efforts, has asserted that it is an innocent landowner under Section 101(35) of CERCLA. Accordingly, it has filed a petition, pursuant to Section 106(b) of CERCLA, to recover $575,000 in costs it incurred in complying with the EPA's Second Unilateral Administrative Order.[2] As the United States acknowledges, "If successful, Brook Village would be entitled to reimbursement of up to $575,000 it sought in its petition, plus interest, and EPA would likely be foreclosed from seeking any other contribution from Brook Village." *Id.*, p. 17.

In the Superfund Amendments and Reauthorization Act (SARA), "Congress provided an affirmative defense for landowners, who innocently and in good faith, purchase property without knowledge that a predecessor in the chain of title had allowed hazardous substances to be disposed on the property." *United States* v. *Domenic Lombardi Realty, Inc.*, 290 F. Supp.2d 198, 209 (D. RI 2003). That defense, called the innocent landowner defense, provides a statutory defense to liability where (1) the contamination was caused by third parties prior to the

[2] The Second UAO Order required Brook Village to participate in over $2 million of "non-time critical" removal activities at the Site. These activities included removal of 340 tons of contaminated soil and sediment from the southern portion of the Site, and complete restoration of the Allendale Dam, none of which occurred on property owned by Brook Village. As demonstrated in its petition, Brook Village qualifies as an innocent landowner within the meaning of CERCLA and is entitled to reimbursement of $575,000 in response costs incurred to comply with the Second UAO. See 42 U.S.C. §§ 9607(b)(3), 9601(35).

defendant's purchase of the land; (2) the defendant had "no reason to know" that the property was contaminated; (3) the defendant made "all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice;" and (4) once the contamination was discovered, the defendant exercised due care with respect to the hazardous substances concerned. *Id.*

According to EPA, the hazardous substances were released in connection with industrial activities at the Site by unrelated third parties long before Brook Village purchased its property in 1976. *See* Complaint, para. 7. In addition, Brook Village has submitted substantial evidence to EPA demonstrating that, in light of contemporary standards at the time Brook Village purchased its property, Brook Village made all "all appropriate inquiry" and "had no reason to know" that the property was contaminated. This evidence, submitted herewith, includes statements by former EPA Administrators, Deputy Administrators, and Regional Administrators, as well as by scientists, city planners and real estate experts – all supporting Brook Village's assertion that, in 1976, "it had no reason to know" that the former industrial site was contaminated. This evidence includes, among other materials, the following:

1. **Report of Russell Train, EPA Administrator, 1973 to 1977** (stating that, during the 1970s, "citizens and businesses were not yet conscious of the consequences of land disposal of industrial wastes, both in terms of potential harm to the environment, as well as future exposure to liability").

2. **Report of John McGlennon, EPA Regional Administrator for Region 1, 1971 to 1977** (stating that, during the 1970s, "EPA Region I (a) did not recognize that the disposal of chemicals and other industrial wastes in the soil could eventually pose a hazard to human health and the environment or give rise to liability; (b) did not recognize that dioxin in the soil posed any danger to human health or the environment; and (c) did not have the technical ability to detect dioxin in one part per billion").

3. **Statement of John Quarles, EPA Deputy Administrator, 1973 to 1977** (stating that, during 1976, "a real estate developer who purchased a former industrial site, including one that used or manufactured chemicals, would not have understood that

past disposal activities at the site would have resulted in environmental 'contamination'").

4. **Statement of William Kane Reilly, EPA Administrator, January 1989 to January 1993** (stating that "it would be inconsistent with the innocent landowner provision to contend that a party who acquired a parcel in 1976 or earlier is liable simply because it knew or should have known that the site had previously been occupied by a cannery, a chemical facility or a manufacturing plant which may have disposed of its wastes in the ground").

5. **Statement of Michael Deland, EPA Regional Administrator for Region I, 1983 to 1989** (stating among other things, that "an interpretation of the innocent landowner defense which disqualifies a pre-purchaser simply on the basis that there were then-commonplace indications of earlier industrial use (such as stained soil or reports of drum storage) would undercut the defense and appears to be inconsistent with the purpose of the provision").

6. **Statement of Donald S. Stever, Chief, Pollution Control Section, Department of Justice, 1979 to 1982** (stating that, "when viewed in the proper historical context, there is thus no basis for concluding that during the 1970s, a real estate developer who purchased the site of a former chemical company 'should have known' that 'hazardous substances' were present").

7. **Report of Norman Byrnes** (real estate attorney with over 50 years experience stating the Brook Village's pre-purchase inquiry was consistent with good commercial and customary practice involving real estate transactions in the mid-1970s).

8. **Statement of Lawrence Goldman** (former EPA Region I Enforcement Chief and President of Goldman Environmental Consultants, Inc. stating that at the time of the October 1976 Brook Village Closing, there was no "due diligence" standard regarding soil contamination and there was no industry conducting due diligence site assessments as we have come to know them today).

9. **Statement of Jeffrey A. Gofton, former North Providence-based planner for the Rhode Island Department of Community Affairs** (stating, "In 1975-76, it was widely believed that the former site of the Metro Atlantic chemical company was particularly well-suited for the development of elderly housing . . . [T]here was no understanding or concern among state planners and local officials that previous land disposals of chemicals on the site posed a risk to human health or the environment").

10. **Report of Thomas S. Andolfo, MAI,** (entitled, "Historical Valuation of Brook Village Property and Eleven Other HUD Properties in Greater Providence Area") (demonstrating that Brook Village did not purchase its property at a discount to market rates because of the presence of environmental contamination).

11. **Report by Thomas E. Roy, P.E., P.G., L.S.P.** (establishing that in 1976 technologies and methodologies were commercially unavailable for detecting in the soil dioxin and other industrial wastes recently discovered on the Brook Village property).

*See* Brook Village's Petition for Reimbursement and Appendix thereto for a more complete presentation of Brook Village's qualification as an innocent landowner.[3]

Brook Village has spent substantial amounts of money in legal fees and related costs gathering evidence to establish that it qualifies as an Innocent Landowner. While Brook Village believes that it has no liability for the Site and is also entitled to reimbursement, it recognizes that it would be extremely expensive to fully litigate the issue, that its property reserve accounts have been substantially depleted, and that success is not certain. Similarly, the United States acknowledges that "Brook Village may be in a position to satisfy some of the prerequisites of the innocent landowner defense" and that "the United States faces litigation risks." United States Memorandum, page 17. The proposed Consent Decree properly reflects the uncertainties inherent in the litigation. *Id.*

Brook Village respectfully urges the Court to enter the Consent Decree so that it may enter into the Preservation Refinancing with Rhode Island Housing, thereby generating funds to settle its potential liability under CERCLA and enabling it to continue providing affordable housing to the elderly in North Providence.

---

[3] CERCLA Section 113(h) prohibits "pre-enforcement" judicial review of defenses to liability under the statute. *See, e.g., Reardon* v. *United States*, 947 F.2d 1509, 1513 (1st Cir. 1991). As a result, Brook Village has had no opportunity to submit its innocent landowner defense to a court to establish that it is not liable under CERCLA. Rather, Brook Village has been required, at great cost, to first comply with EPA Orders and then petition the EPA's Environmental Appeals Board ("EAB") for reimbursement based on its innocent landowner defense. Brook Village has filed its petition, and by agreement those proceedings have been stayed while the parties seek judicial approval of this settlement.

BROOK VILLAGE ASSOCIATES
LIMITED PARTNERSHIP

By its attorneys,

William S. Eggeling
(RI Bar #4008)
Rope & Gray LLP
30 Kennedy Plaza
Providence, RI 02903
(401) 455-4400

CERTIFICATE OF SERVICE

I, William S. Eggeling, hereby certify that copies of Brook Village's Memorandum in Support of United States' Motion for Entry of Consent Decree, were served on February 22, 2006 by first class mail, postage prepaid, as follows:

Henry S. Friedman
Senior Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

Laurie Burt, Esq.
Foley Hoag
Seaport World Trade Center
155 Seaport Blvd.
Boston, MA 02210-2600

Richard J. Welch
Moses & Afonso
170 Westminster Street, Suite 201
Providence, R.I. 02903

Howard J. Castleman
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111

Michael Milito
Rhode Island Housing and Mortgage Finance Corporation
44 Washington Street
Providence, RI 02903

Brian Wagner
Rhode Island Department of Environmental Management
235 Promenade Street
Providence, RI 02908-5767

Terrence Tierney
Assistant Attorney General
R.I. Department of the Attorney General
150 North Main Street
Providence, RI 02903

Jerome C. Muys, Jr.
Swidler Berlin
The Washington Harbour
3000 K. Street, N.W., Suite 300
Washington, D.C. 20007-5116

James P. Ray
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

William S. Eggeling
(RI Bar #4008)
Rope & Gray LLP
30 Kennedy Plaza
Providence, RI 02903
(401) 455-4400