IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP, ET AL.<br>Defendants. | CIVIL ACTION NO. 05-195S |

**BRIEF OF CENTERDALE MANOR ASSOCIATES**
**IN SUPPORT OF UNITED STATES' MOTION TO ENTER CONSENT DECREES**

Centerdale Manor Associates ("Centerdale Manor") submits this memorandum in support of the United States' Motion To Enter Consent Decrees. For all of the reasons stated in the United States' Memorandum in Support of Its Motion to Enter Consent Decree (United States' Memorandum), the consent decree between the United States and Centerdale Manor (the "Consent Decree" or the "Decree") is fair, adequate, and reasonable, and this Court should enter it as a final judgment. The Decree represents the epitome of a settlement reached in the public interest. Centerdale Manor writes simply to supplement the United States' Memorandum with respect to one issue arguably relevant to the Court's review of the Decree.

As the United States noted, Centerdale Manor provides affordable housing for about 130 elderly Rhode Island residents through the federal Section 8 housing program. The Section 8 program is implemented in Rhode Island and financing is provided through the Rhode Island Housing and Mortgage Finance Corporation ("Rhode Island Housing"). The property Centerdale Manor owns is located on a portion of the site known as the Centredale Manor Restoration

Project Superfund Site. It is undisputed that Centerdale Manor purchased the property after all industrial operations ceased. Centerdale Manor has never used the parcel for anything other than affordable housing. It is true that Centerdale Manor performed due diligence and discovered the existence of some drums on the property prior to its purchase in 1982, , and it is also true that Centerdale Manor subsequently contacted the Rhode Island Department of Environmental Management ("RIDEM") and removed the drums exactly as directed by RIDEM, thereby fully cooperating with the state's environmental agency and with what it understood to be the necessary environmental compliance at that time. Centerdale Manor had no knowledge of other contamination on its property at the time of the purchase.

As an owner of a regulated elderly housing project located on a Superfund site, Centerdale Manor must serve two public masters, both EPA and Rhode Island Housing. It is beholden to two very distinct and equally important public interests – that of making PRPs pay for the cleanup of contamination at the Site and preserving this important elderly housing resource. EPA has negotiated a consent decree that fully acknowledges and effectively balances both interests. Through this cashout settlement, Centerdale Manor will be able to make a very substantial payment to the United States and the State through the Preservation Refinancing Program by converting illiquid equity into cash for the settlement and committing the project to affordable housing for an additional forty years.

Resolution of such potentially competing interests is not unique in environmental law, as evidenced by passage of the Brownfields amendments to CERCLA, spearheaded by Rhode Island Senator Lincoln Chaffee. The Small Business Liability Relief and Brownfields Revitalization Act, Pub. L. No. 107-118, 115 Stat. 2356 (2002) (codified in various sections at 42 U.S.C. 9601-9675), was passed in 2002, twenty-two years after the CERCLA was enacted,

and with the significant benefit of hindsight. The amendments reflected lawmakers' recognition that the imposition of strict liability on purchasers of contaminated property who had no connection to the actual generation and disposal of hazardous material had significantly discouraged the purchase, cleanup, and development of such contaminated land. This disincentive left many abandoned, former industrial properties, often in urban areas, with small likelihood that they would be transformed to beneficial uses so urgently needed in these communities. The cornerstone of the Brownfields Amendments is, of course, that a new owner who acts responsibly to cooperate and facilitate the cleanup and redevelopment of contaminated property is exempt from CERCLA liability. 42 U.S.C. § 9607(r).

In many respects, Centerdale Manor was a model Brownfields redevelopment before its time. Centerdale Manor conducted due diligence of the property appropriate at the time it was purchased in the early 1980s. When Centerdale discovered drums left or abandoned on the property, it immediately contacted the cognizant state agency, RIDEM, and properly removed the drums under the direction and supervision of that agency, voluntarily and at its own expense. Centerdale then proceeded to construct the present apartment complex, which it has operated for affordable elderly housing under the watchful eyes of Rhode Island Housing and HUD for more than twenty years. Despite these equitable factors, Centerdale is not eligible for the liability protections afforded by the CERCLA Brownfield amendments; the law is not retroactive. However, this settlement, like the Brownfield amendments, reconciles the potentially divergent interests of affordable housing and environmental protection by providing resources for the cleanup of the Site and liability protection for Centerdale to ensure the refinancing and financial stability of this affordable housing project for many years to come.

Centerdale Manor's property is but one part of the overall Centerdale Manor Superfund Site. Indeed, as the complaints allege, the property on which Centerdale Manor is located is the former location of the barrel operations at the Site, rather than the location of the chemical company operations associated with the generation of dioxin, one of the primary contaminants of concern at the Site. Moreover, Centerdale Manor has already incurred hundreds of thousands of dollars in addressing the contamination on the property that it owns, through its cooperation with EPA in implementing the first and third administrative orders for the Site. Those orders involved, in part, construction of a protective cap on Centerdale Manor's property and a cap and drainage improvements in the former tailrace area adjacent to the property.[1]

One issue not specifically addressed in the United States' Memorandum is the litigation risk faced by the United States with respect to its claims against Centerdale Manor. Because litigation risk is one of the factors that courts may examine to determine whether a settlement is reasonable, United States v. Davis, 261 F.3d 1, 26-27 (1st Cir. 2001), Centerdale is compelled to describe the significant litigation risk that the government would face in this matter in the absence of a settlement.[2]

---

1 Centerdale Manor also expended many thousands of dollars in connection with compliance with EPA's second Administrative Order, which required the removal of significant volumes of contaminated soils and sediments from Allendale Pond and the restoration of the Allendale Dam. None of this work took place on the Centerdale Manor property.

2 While litigation risk is often mentioned as a factor, the settlement entered and affirmed in the Davis litigation resolved claims by the United States against a party, United Technologies, that had gone to trial, lost, and had a judgment entered against it for joint and several liability for the entire cost of the cleanup. Notwithstanding the prior entry of judgment against United Technologies, the District Court had no difficulty concluding that it was reasonable for the United States to settle with United Technologies for less than the entire cleanup cost. United States v. Davis, 11 F.Supp. 2d 183, 192-93 (D.R.I. 1998). Nor did the "novelty" of a settlement in which the United States received "only a portion of the remediation cost from a party previously adjudged liable for the entire cost" trouble the Court of Appeals. United States v. Davis, 261 F.3d at 25. Aside from noting the limited litigation risk faced by the government on appeal, the Court of Appeals also noted with approval the District Court's statement that "fundamental fairness prohibits the imposition of liability that is totally disproportionate to UTC's share of responsibility." Id. at 26. Given Centerdale Manor's equitable position as a Section 8 housing provider who never conducted industrial operations at the Site, fundamental fairness backstops this settlement to an even greater degree than it did the United Technologies settlement in Davis.

Centerdale Manor did not conduct any industrial operations on its property or at the Site. It purchased its property, only a portion of the overall Site, after the industrial operations causing contamination had ceased. Centerdale Manor has no connection to the previous industrial operations conducted on other parts of the Site which have caused contamination of the Site. Moreover, it has already paid for a substantial part of the remediation of the bulk of its property. Under these circumstances, Centerdale Manor would have significant, viable divisibility defenses.

Generally, if the government establishes that a party is liable,[3] the default assumption under CERCLA is that such liability is joint and several. O'Neil v. Picillo, 883 F.2d 176 (1st Cir. 1989). However, courts have not hesitated to conclude that such liability is divisible, where the defendant has introduced cogent evidence providing a basis for such divisibility. The most telling such case is United States v. Hercules, Inc., 247 F.3d 706 (8th Cir. 2001). The Hercules case involved a pesticide manufacturing facility. Hercules owned and operated the facility for ten years. Id. at 712. Hercules had buried drums at the site and had altered the manufacturing process in a way that generated additional wastes containing high concentrations of dioxin, the extremely toxic compound that was the focus of the site cleanup. Id. Hercules also acknowledged "numerous leaks and spills during its operation of the site." Id. On these facts, the District Court entered summary judgment for the government against Hercules. However,

[3] Centerdale Manor also qualifies for the so-called "innocent landowner" defense under CERCLA. 42 U.S.C. § 9601(35). Since Centerdale Manor investigated the property, found a limited number of drums, and removed them pursuant to the direction of RIDEM before it purchased the property, it reasonably had no knowledge of the remaining contamination of the property prior to its purchase. Centerdale Manor, unlike Brook Village, did not assert a claim to recover response costs incurred in responding to EPA's orders because the Decree requires the Settling Defendants to relinquish any such claims and Centerdale Manor felt it was appropriate, consistent with its status as a Section 8 housing provider and its limited ability to pay, to limit its transaction costs.

the Court of Appeals reversed, notwithstanding its observation that proving divisibility can be difficult. Id. at 717.

The Court first stated the general proposition that "once the government has established the four essential elements of liability the burden shifts to the defendant to demonstrate, by preponderance of the evidence, that there exists a reasonable basis for divisibility. Id., citing, *inter alia*, O'Neil, 883 F.2d at 182. The Court then noted that while such a reasonable basis can be established through evidence based on "geographical considerations", id., it can also be established even if a case involved a "single harm," so long as "it is possible to discern the degree to which different parties contributed the to the damage." Id., at 718. The Court then emphasized that such divisibility may be demonstrated "even where wastes have become cross-contaminated and commingled, for 'commingling is not synonymous with indivisible harm.'" Id., citing United States v. Alcan Aluminum Corp., 990 F.2d 711, 722 (2nd Cir. 1993). Finally, the Court of Appeals stated that a defendant "need not prove that its 'waste did not, or could not contribute' to any of the harm at a CERCLA site in order to establish divisibility, . . . ." Id.

Although the Hercules decision is the most comprehensive analysis of the contours of the divisibility defense under CERCLA, it is by no means unique. The availability of the divisibility defense has been recognized by all of the appellate courts which have examined it. See, e.g., O'Neil, supra, Alcan, supra, United States v. Alcan Aluminum, 964 F.2d 252, 268-69 (3d Cir. 1992); In re: Matter of Bell Petroleum Services, Inc., 3 F.3d 889 (5th Cir. 1993); see also U.S. v. Broderick Inv. Co., 862 F.Supp. 272 (D.Colo. 1994). It is telling that each of these cases involved assertions of the divisibility defense by industrial corporations that either sent hazardous materials to the site at issue or actually conducted industrial operations at the site. This case, involving a Section 8 housing provider who never conducted industrial operations and

purchased part of the site after those operations had ceased, presents a much stronger divisibility argument. By way of example, a court could easily conclude that Centerdale Manor bears no responsibility for cleanup that may be required beyond the property that it owns.[4]

In short, Centerdale Manor could assert a cogent and powerful divisibility defense. This Court need not be persuaded by the defense in order to take notice of the litigation risk the assertion of the defense would pose for the United States. Therefore, in addition to all of the reasons provided in the United States' Memorandum in support of entry of the Decree, the litigation risk faced by the United States also contributes to the reasonableness of the settlement with Centerdale Manor.

The settlement is fair, reasonable and in the public interest, and this Court should allow the United States' motion to enter the Consent Decree.

Respectfully submitted,

CENTERDALE MANOR ASSOCIATES
By its attorneys,

Laurie Burt (RJW)
Laurie Burt, Esq. (Pro Hac Vice)
Seth D. Jaffe, Esq. (Pro Hac Vice)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
Phone: (617) 832-1000
Fax: (617) 832-7000

Richard J. Welch, Esq. (RI Bar #4497)
Moses Afonso Jackvony, Ltd.
170 Westminster Street, Suite 201
Providence, RI 02903
Phone: (401) 453-3600
Fax: (401) 453-3604

4 This is not to suggest that CERCLA, as a general matter, is concerned with property boundaries. However, where Centerdale Manor never owned or operated the rest of the Site and bought its property after industrial operations that caused the contamination of the remainder of the Site had ceased, it would require a strained reading of CERCLA to suggest that Centerdale Manor is the owner or operator of the remainder of the Site.

**CERTIFICATION**

I, Richard J. Welch, hereby certify that I caused to be mailed via first class mail, postage prepaid, and by electronic mail, the enclosed Brief of Centerdale Manor Associates in Support of United States' Motion to Enter Consent Decrees to the following referenced counsel on the 2nd day of March, 2006.

Henry S. Friedman
Senior Attorney
Environmental Enforcement Section
Environmental and Natural Resources
U.S. Department of Justice
Washington, DC 20044-7611

Luis Matos
Assistant United States Attorney
US Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Brian A. Wagner
Deputy Chief Legal Counsel
RIDEM – Office of Legal Services
235 Promenade Street
Providence, RI 02908-5767

Michael V. Milito, Esq.
Deputy Assistant Director
Law and Human Resources
Rhode Island Housing and Mortgage Finance Corporation
44 Washington Street
Providence, RI 02903-1721

William S. Eggeling, Esq.
Ropes & Gray LLP
30 Kennedy Plaza
Providence, RI 02903

Terence J. Tierney, Esq.
Special Assistant Attorney General
Rhode Island Department of Attorney General
150 South Main Street
Providence, RI 02903

Laurie Burt, Esq.
Seth D. Jaffe, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

Richard J. Welch

B3161510.4