IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP, ET AL.<br><br>Defendants. | CIVIL ACTION NO. 05-195S |

**UNITED STATES' OPPOSITION TO EMHART'S MOTION TO INTERVENE**

The United States of America, by the authority of the Attorney General and on behalf of the United States Environmental Protection Agency ("EPA") and the Department of the Interior ("DOI"), opposes Emhart Industries, Inc.'s ("Emhart") Motion to Intervene in this case so that it can take discovery and oppose the Consent Decrees that have been lodged with the Court. The United States submits that Emhart should not be permitted to intervene for the reasons set forth below.

## I. PRELIMINARY STATEMENT

On May 6, 2005, the United States lodged two Consent Decrees: one between the United States and the State of Rhode Island and Defendant Brook Village Associates Limited Partnership and the second Decree between the United States and the State of Rhode Island and Centerdale Manor Associates.[1] The Consent Decrees, entered into pursuant to the

[1] The spelling of the Superfund Site and the Defendant is slightly different. The Superfund Site is spelled "Centredale" and the Defendant's name is spelled "Centerdale."

Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9601, et seq., provided for the reimbursement of certain costs that the United States and the State have incurred and will incur, and for payment of natural resource damages, in connection with the release or threatened release of hazardous substances at or from a site known as the Centredale Manor Restoration Project Superfund Site located south of Route 44 on the eastern bank of the Woonasquatucket River, in North Providence, Rhode Island ("the Site"). Centerdale Manor and Brook Village own and operate subsidized senior citizen housing projects on the Site, both having developed at the Site after various other entities disposed of hazardous substances at the Site. The settlements with Brook Village and Centerdale Manor are based on the limited ability to pay of these parties as determined by a qualified financial analyst hired by EPA and based on the financial analysis performed by Rhode Island Housing and Mortgage Finance Corporation ("Rhode Island Housing"), the public corporation of the State that regulates the public housing projects. In addition, these settlements are based upon public interest considerations in that the Settling Parties came to the Site after all industrial activity had ceased and are operators of subsidized low-income housing for the elderly. Through the settlements, the Settling Parties will be paying over $3.5 million in aggregate, plus an additional approximately $360,000 through Brook Village's settlements with its insurance carriers.

After the United States lodged the Consent Decrees, the United States published notice of the lodging in the Federal Register, thereby commencing a 30-day public comment period. 70 Fed. Reg. 30483 (May 26, 2005). The United States received comments from four separate entities – including Emhart – and the State of Rhode Island received one comment. The United States carefully evaluated all the comments and determined that none of the comments provide a

basis for rejecting the Consent Decrees. Accordingly, the United States filed a Motion to Enter the Decrees and submitted in support a detailed Responsiveness Summary in which the United States evaluated all the comments. The United States moved to enter the Decrees because they are fair, reasonable and in the public interest.

On February 22, 2006, Emhart filed a Motion to Intervene. Emhart asserts that it seeks discovery and that it requests that the Court reject the proposed Consent Decrees. The sole reason Emhart asserts for seeking intervention is that, if entered, the Decrees would preclude Emhart from seeking contribution from the defendants and their general partners. Emhart Industries' Memorandum of Law in Support of Its Motion to Intervene ("Emhart's Memorandum"), p. 7. Emhart provides no other basis for intervention.

The United States submits that Emhart's Motion to Intervene should be denied for the reasons that follow.

## II. ARGUMENT

## EMHART'S MOTION TO INTERVENE SHOULD BE DENIED

### A. Statutory Background

Because Emhart's Motion to Intervene arises in the context of a CERCLA settlement, it must be addressed in the context of the settlement provisions of CERCLA. "CERCLA both provides a mechanism for cleaning up hazardous waste sites, 42 U.S.C. §§ 9604, 9606 . . . and imposes the costs of the cleanup on those responsible for the contamination." Pennsylvania v. Union Gas, 491 U.S. 1, 7 (1989). Congress enacted the law in 1980 "to protect and preserve public health and the environment by facilitating the expeditious and efficient cleanup of hazardous waste sites." Carson Harbor Vill., Ltd. v. Unocal Corp., 270 F.3d 863, 880 (9th Cir.

2001) (citation omitted). Accord Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074, 1081 (1st Cir. 1986); United States v. Kayser-Roth Corp., 910 F.2d 24, 26 (1st Cir. 1990). Fundamental goals of CERCLA include accelerating cleanups and minimizing litigation. United States v. Pitney Bowes, Inc., 25 F.3d 66, 72 (2d Cir. 1994); Avnet, Inc. v. Allied-Signal, Inc., 825 F. Supp. 1132, 1138 (D. R.I. 1992) ("CERCLA's goals are furthered when the EPA is able to focus its resources on cleaning up sites rather than litigating with PRP's."); In re Acushnet River, 712 F. Supp. 1019, 1027 (D. Mass. 1989).

In order to accomplish prompt and effective cleanup of hazardous sites, Congress mandated that whenever "practicable" and in the "public interest," settlements should be encouraged and facilitated under CERCLA . 42 U.S.C. § 9622(a); see In re Tutu Wells, 326 F.3d 201, 206 (3d Cir. 2003); B.F. Goodrich v. Betkoski, 99 F.3d 505, 527 (2d Cir. 1996). To encourage settlements so as to expedite effective remedial actions and minimize litigation, Congress provided that a party that has "resolved its liability with the United States . . . in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. §9613(f)(2). See United Technologies v. Browning-Ferris Indus., 33 F.3d 96, 103 (1st Cir. 1994). "This protection against contribution allows settling parties to pay their agreed settlement and end their involvement in costly litigation without 'fear that a later contribution action will compel them to pay still more money to extinguish their liability'." Arizona v. Motorola, Inc., 139 F.R.D. 141, 145 (D. Ariz. 1991) (citation omitted).

Once a settlement is reached, CERCLA provides for a period of public comment. 42 U.S.C. § 9622(d) and 28 C.F.R. § 50.7. The United States provided a public comment period in

this case. 70 Fed. Reg. 30483 (May 26, 2005). During this period, persons not named as parties have an opportunity to submit comments on the proposed Consent Judgment to the Attorney General for consideration prior to such time as the United States seeks to have the Court enter the Consent Decrees as final judgments. 42 U.S.C. § 9622(d)(2)(B). CERCLA provides that the United States "may withdraw or withhold its consent to the proposed judgment if the comments, views, and allegations concerning the judgment disclose facts or considerations which indicate that the proposed judgment is inappropriate, improper, or inadequate." Id. Should the United States move for entry of the proposed judgment, CERCLA requires that the United States file with the Court any written comments it receives relating to the proposed judgment. Id.

A motion to enter a consent decree requires this Court to review the proposed Consent Judgment to determine if the settlement is fair, reasonable, and in keeping with the goals of CERCLA in accordance with the standards set forth in United States v. Cannons Eng'g Corp., 899 F.2d 79, 84-85 (1st Cir. 1990).

**B. Emhart Does Not Meet The Criteria for Intervention As Of Right**

Emhart asserts that it should be permitted to intervene in this matter as of right under both CERCLA Section 113(i) and Fed. R. Civ. P. 24(a)(2). In order to meet the requirements for intervention as of right under either provision, the proposed intervenor must: 1) timely file the motion to intervene, 2) demonstrate an interest in the action, 3) demonstrate that the interest may be impaired by the disposition of the action, and 4) demonstrate that the interest is not protected adequately by the parties to the action. All four requirements must be met before intervention as

of right will be granted.[2] Public Serv. Co. of New Hampshire v. Patch, 136 F.3d 197, 204 (1st Cir. 1998). See, e.g., United States v. City of New York, 198 F.3d 360, 364 (2d Cir. 1999); Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989); Pitney Bowes, 25 F.3d at 70. "The failure to satisfy any one of [the four requirements for intervention as of right] dooms intervention." Public Serv. Co. of N.H., 136 F.3d at 204. Emhart is not entitled to intervene as of right in this matter under either Rule 24(a)(2) or under CERCLA Section 113(i) because it fails to meet the four part test justifying such intervention.

### 1. Emhart Does Not Have a Protectable Interest in This Action

"[A] putative intervenor must show at a bare minimum that it has a significantly protectable interest . . . that is direct, not contingent." Public Serv. Co. of N.H., 136 F.3d at 205 (citations omitted); United States v. Acorn Eng'g Co., 221 F.R.D. 530, 533 (C.D. Cal. 2004) ("[T]he determination of intervention ultimately turns on the third prong, namely whether the party seeking intervention has a sufficient legally protectable interest." (citations omitted)). To satisfy the second requirement for intervention – whether it has an interest sufficient to justify intervention as of right under Rule 24(a)(2) or CERCLA Section 113(i) – Emhart must have a legally protectable interest. United States v. Peoples Benefit Life Ins. Co., 271 F.3d 411, 415 (2d Cir. 2001); United States v. Acorn Eng'g, 221 F.R.D. at 553; City of New York, 198 F.3d at 365. The only interest Emhart asserts that it will lose is its right to contribution. Emhart's

[2] Rule 24(a)(2) and CERCLA §113 differ only in the burden of proof with regard to the fourth "adequate representation" requirement. Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 641 (1st Cir. 1989)(The statutory conditions for intervention under CERCLA § 113(i) are "virtually identical to those required for intervention as of right under Rule 24(a)(2).") In this respect, Rule 24(a)(2) places the burden of proving inadequate representation on the applicant for intervention, while Section 113(i) of CERCLA requires the government to show that the applicant's interests are adequately represented. Pitney Bowes, 25 F.3d at 70.

Memorandum of Law, at 7.

The majority of courts which have considered motions for intervention by a PRP that claims a "contribution interest" in intervention, as Emhart does here, have denied the request for intervention under Rule 24(a)(2) and CERCLA 113(i). In Acorn Eng'g, the Court analyzed the relationship between Section 113(f)(2), which provides settlors with protection from contribution lawsuits of the kind that Emhart seeks to bring against the settlors here, and Section 113(i), which authorizes intervention: "The Court believes that if section 113(i) and section 113(f) are analyzed in tandem and then construed in such a way as to render them maximally harmonized, section 113(i)'s right of intervention must not include the right of a non-settling PRP to intervene for purposes of a contribution claim against settling PRPs." 221 F.R.D. at 535.

The Court also examined the legislative history underlying these provisions and found that the "CERCLA right of contribution was not intended to extend to non-settling PRPs seeking to protect a contribution interest."[3] Id. at 536. The Acorn Court noted that "allowing non-settling PRPs . . . to intervene as of right would undermine the clear Congressional intent behind CERCLA and SARA to generate early and efficient settlement, rather than prolonged and expensive litigation." Id. at 537.

Other courts have similarly held that Congress intended for non-settlers, such as Emhart, to confront precisely the type of risk Emhart points to: if the Consent Decrees are entered as judgments, Emhart will not be able to seek contribution from the Settling Defendants given CERCLA's Section 113(f)(2) statutory contribution protection. In order to encourage settlement,

---

[3] For example, the Court noted that the House Report on Section 113(i) indicates that intervention may be appropriate when a person "claims a direct public health or environmental interest in the subject of a judicial action . . . ." Acorn, at 536.

"Congress explicitly created a statutory framework that left nonsettlers at risk of bearing a disproportionate amount of liability." Cannons, 899 F.2d at 91; see United States v. Davis, 261 F.3d 1, 28 (1st Cir. 2001) ("The result of non-settlors possibly bearing disproportionate liability for open-ended cost of remediation is therefore consistent with the statute's paradigm, which encourages the finality of early settlement."); Dravo Corp. v. Zuber, 13 F.3d 1222, 1225 (8th Cir. 1994)(contribution protection serves as a "powerful incentive" for PRPs "to resolve their potential liability"); United States v. Mid-State Disposal, Inc., 131 F.R.D. 573, 577 (E.D. Wis. 1990); City of New York v. Exxon Corp., 697 F. Supp. 677, 694 (S.D.N.Y. 1988).

Courts have also held that a PRP's interest in preserving its potential contribution claim under Section 113(f)(1) as against settling PRPs under CERCLA is not a "legally protectable interest" and is "too speculative and contingent" to sustain a claim for intervention.[4] Acorn, at 536-38; Motorola, 139 F.R.D. at 144-47. Accord United States v. Wheeling Disposal Serv., No. 92-0132-CV-W-1, 1992 WL 685724 at *2 (W.D. Mo. Oct. 1, 1992); see also United States v. ABC Indus., 153 F.R.D. 603, 606-07 (W.D. Mich. 1993) (even PRP that has been sued lacks interest sufficient to sustain intervention as of right); United States v. Beazer East, 22 Chem. Waste Litig. Rep. at 220-25, 1991 WL 557609 at *5 (N.D. Ohio March 6, 1991); United States v. Browning-Ferris Indus. Chem. Serv., Inc., 19 Chem. Waste Litig. Rep. 436, 438-39, 1999 U.S. Dist. Lexis 16596 at *8 (M.D. La. Nov. 15, 1989)(PRP that has already settled lacks sufficient interest). In Acorn, the Court held that "[t]o constitute a legally protectable interest, the interest

---

[4] The interest has been considered "too speculative and contingent" because it is unclear what liability, if any, and what contribution right, if any, a party not participating in the settlement may have, as that right depends on the outcome of some future dispute. United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1184-85 (3d Cir. 1994).

must be one which the substantive law recognizes as belonging to or being owned by the applicant." 221 F.R.D. at 538 (emphasis in original) (citations omitted). In rejecting the proposed intervenor's argument that a contribution claim constitutes an interest recognized by substantive law, the Court held: "The Court respectfully rejects this analysis and, instead, holds that a non-settling PRPs' contribution interest is not only unrecognized by the substantive law, but is also expressly prohibited by the substantive law, namely section 113(f)(2). The interest is thus rendered merely economic, rather than statutory, and is insufficient to support intervention as of right." Id. (emphasis in original). Similarly, in Arizona v. Motorola, where non-parties sought intervention in the context of a lodged Consent Decree to preserve contribution rights under CERCLA 113(f)(1), as Emhart does here, the district court held that the aspiring intervenors had "[a]t best . . . a remote economic interest that is insufficient to support intervention" under Rule 24(a)(2) and CERCLA 113(i). Motorola, 139 F.R.D. at 146. Challenges to "the fairness or adequacy" of the settlement, the court found, would be adequately "addressed in the context of the motion for entry of the consent decree." Id.

Other district courts have taken a still more restrictive view of intervention in the CERCLA settlement context. They have refused to allow intervention to oppose entry of consent agreements even where the applicants for intervention already had been sued. In Beazer East, the district court denied intervention in the context of a lodged Decree, where the proposed intervenor already had been sued. Beazer East, 22 Chem. Waste Litig. Rep. at 224, 1991 WL 557609 at *5. Finding that the test for intervention had not been satisfied by the movant's contingent economic interest in contribution, the court commented that, as a policy matter, if this were not the case, parties such as the movant could refuse to engage in meaningful settlement

negotiations regarding cleanup and response costs at a hazardous waste site, and then, when a number of PRPs had agreed to a proposed settlement and such settlement was ready for the court's approval, that party not participating in the settlement could intervene, causing delays in implementation of the cleanup and effectively thwarting the settlement process. Id., 22 Chem. Waste Litig. Rep. at 222-23, 1992 WL 557609 at *4. Such is the case presently before this Court, as intervention by Emhart here will thwart settlement, which delays the recovery of funds for cleanup and therefore undermines the primary goals of CERCLA. See ABC Indus., 153 F.R.D. at 607; Browning-Ferris, 19 Chem. Waste Lit. Rep. at 438-39, 1989 U.S. Dist. Lexis 16596 at **8-9.

**2. The cases on which Emhart relies do not support its position**

Emhart relies heavily upon the Eighth Circuit's decision in United States v. Union Electric, 64 F.3d 1152 (8th Cir. 1995), to assert that it is entitled to intervention as of right. In Union Electric, the Eighth Circuit went against the great weight of authority and also failed to appropriately apply the statutory construction approach it espoused. In fact, while the Eighth Circuit has not explicitly overruled Union Electric, in United States v. BP Amoco Oil PLC, 277 F.3d 1012, 1017 (8th Cir. 2002), it adopted a much different interpretation of CERCLA Section 113(f)(1) and (f)(2), which is in keeping with the majority of decisions.

In BP Amoco, which arose in the context of a takings argument, the Eighth Circuit was faced with the issue of whether an intervenor, with a filed contribution claim, had a vested property interest in that claim under Section 113(f)(1). In holding that it did not, the Court of Appeals went on to find that a contribution claim under CERCLA Section 113(f)(1), even if already filed against settling defendants to a lodged CERCLA consent decree, was subject to

limitation by Section 113(f)(2)'s statutory grant of contribution protection. Id. at 1017. Thus, in specifically holding that a filed Section 9613(f)(1) contribution claim is "subject to and limited by § 9613(f)(2)" in the context of a takings argument, the Eighth Circuit rejected the earlier Union Electric interpretation of these subsections. Id.

Emhart's reliance upon In re Acushnet is also misplaced. First, the Acushnet Court did not allow intervention as of right, but only permissive intervention. Second, the intervener in Acushnet, the National Wildlife Federation ("the Federation"), sought to intervene because it challenged EPA's methodology of calculating natural resource damages. 712 F.Supp. at 1023-24. Here, Emhart's sole basis for intervention is an interest in a contribution claim, an individual economic interest which the Court did not evaluate, and which other courts have deemed insufficient to support intervention. Third, the Federation agreed in advance, that if its motion to intervene was granted, it would only participate in a limited fashion. Thus, the Federation agreed that its participation would be limited to briefing and taking an appeal on certain issues, and it also agreed that it would not take discovery, examine witnesses or take or contest evidence. Id. at 1023. The Court imposed all of these conditions, plus an additional condition when it allowed intervention. Id. at 1024-26.

Conservation Law Found. v. Mosbacher, 966 F.2d 39 (1st Cir. 1992), also does not support Emhart's contentions. There, the Conservation Law Foundation and the United States, through the Department of Commerce, entered into a settlement whereby the United States agreed to a new fishing plan that would carry out the provisions of the Magnuson Act. Certain commercial fishing groups sought to intervene and the District Court denied this motion. The First Circuit reversed, stating that the case at hand "is centered on the procedure provided for

implementation of a federal regulatory scheme." Id. at 43. The Court also recognized that the interest required to sustain intervention must be "direct, not contingent." Id. at 42, quoting Travelers Indem. v. Dingwell, 834 F.2d at 638. The Court also stated that the fishing groups' interests will be substantially affected: "Unlike the situations in Travelers Indemnity and Moosehead Sanitary, detriment is not contingent on the uncertain outcome of later determinations under state law." Id. at 43. However, in the present case, the circumstances relied upon by the Mosbacher Court are not present. First, the settlements here do not involve implementation of a federal regulatory scheme that impacts a large group, but instead concern the economic interests of a single business. Second, the contribution claims here are contingent and do depend upon uncertain outcomes of later determinations – such as whether the United States sues Emhart and the extent of a judgment, if any.

In sum, based on the majority of the case law, the language of the statute, the legislative history and Congressional intent underlying CERCLA, Emhart's contribution interest is insufficient to justify intervention in the circumstances of the lodged settlements before this Court.

### 3. Emhart's Only Potentially Legitimate Asserted Interest Is Protected And Will Not Be Impaired

As set forth above, Emhart's asserted interest in intervention – protecting its contribution claim – fails to meet the requirement of a "legally protectable interest" sufficient to justify intervention as of right. Therefore, this Court need not reach the third issue of the four part intervention test – whether Emhart's interests will be impaired if denied intervention – because such inquiry is irrelevant. See, Public Serv. Co. of N.H., 136 F.3d at 204; Motorola, 139 F.R.D.

at 146 n.6. However, if examined, Emhart's only potentially legitimate interest, in fact, is protected by CERCLA's process for public review and comment, and review by this Court.

CERCLA Section 122(d)(2) specifically provides notice and the opportunity to comment to those who are not parties to a settlement agreement, thereby providing procedural protections before a non-settling party's contribution claim can be extinguished by entry of a Consent Judgment. In Bloomington, Indiana v. Westinghouse Elec. Corp., 824 F.2d 531 (7th Cir. 1987), the Court of Appeals stated that the opportunity for public comment, as opposed to intervention, is the preferred method of communicating to a Court views concerning settlements by consent judgment: "Because [the intervenor] has already had an opportunity to present its views to the district court, it would suffer little prejudice if it were denied permission to intervene." Id. at 537. The Acorn Court reached an identical conclusion: "The Court emphasizes that the proper avenue for [the intervenor] to voice its objections to the proposed consent decree is not through intervention but rather through the specific safeguards of CERCLA section 122(d)(2)." Acorn, 221 F.R.D. at 538-39; see United States v. Bliss, 132 F.R.D. 58, 59-60 (E.D. Mo. 1990) (cities need not achieve party status because public comment procedures protect ability to have input considered); Mid-State Disposal, 131 F.R.D. at 577 (applicants not prejudiced if not allowed to intervene because of opportunity to object during public comment period); Motorola, 139 F.R.D. at 145 (the appropriate avenue for an intervenor applicant to pursue is to lodge an objection to the proposed consent decree through the comment period (citing Beazer East); allowing intervention in this matter would be inconsistent with CERCLA's joint and several liability scheme and its policy favoring early settlements, and would encourage recalcitrance by PRPs).

Emhart took advantage of CERCLA's procedural protections, and submitted two separate

comments totalling eight single spaced pages objecting to the Consent Decrees. Pursuant to CERCLA Section 122(d), Emhart's objections to the reasonableness and fairness of the Decree have already been filed with this Court by the United States along with the United States' Motion to Enter the Consent Judgment. Thus, Emhart need not be granted intervention in order to have its position on the fairness and reasonableness of the Consent Decrees heard, and Emhart cannot complain that its interest will be impaired should this Court deny it intervention.

To the extent that Emhart argues that it did not have the financial information concerning the Settling Defendants' ability to pay when it filed its comments on the Consent Decrees, the United States has provided this information in support of its Motion to Enter and, therefore, this information will be before this Court when it considers the Consent Decrees. Moreover, Emhart's principal objection to the Decrees is that the United States did not require payments from the individual partners. Emhart's Memorandum, p. 3. As is argued below, the Governments's decision not to require payments from the partners does not turn on evaluation of any facts but is an issue for the Court to decide as a matter of law. The United States did not submit any facts on the financial status of the individual partners in support of its Motion to Enter; no such facts are necessary for the Court to determine whether the Governments' decision not to require payments from the individual partners was an abuse of discretion or contrary to law.

**C. Emhart Should Not Be Permitted To Intervene Under Rule 24(b)**

Emhart alternatively requests that this Court grant it permissive intervention. Rule 24(b)(2) provides, in pertinent part:

> Upon timely application anyone may be permitted to intervene in an

> action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

(Emphasis added.)

"Permissive intervention 'is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied.'" New Orleans Pub. Serv., Inc., 732 F.2d 452, 470-71 (5th Cir. 1984) (quoting Wright & Miller, Federal Practice and Procedure: Civil § 1913 at 551); Resolution Trust Corp. v. Boston, 150 F.R.D. 449, 454-55 (D. Mass. 1993)(same). Although there may be common questions of law and fact in this case, the principal consideration, as expressly set forth in the Rule, is whether or not intervention will unduly delay or prejudice the rights of the original parties. See New York News, Inc. v. Kheel, 972 F.2d 482, 487 (2d Cir. 1992); United States Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978). Other factors which may bear upon a court's discretion to afford permissive intervention include whether the interests of judicial economy will be maximized, the legal position advanced by the applicant intervenor, and whether the intervenor applicant would contribute in a significant way to development of the factual record and adjudication of the legal issues involved. Motorola, 139 F.R.D. at 146.

The United States and the Settling Defendants have attempted to achieve a settlement without protracted litigation. The parties have expended significant time and resources to reach an agreement in a complex matter in keeping with CERCLA's goals of encouraging prompt cleanup through settlements and minimizing litigation costs. Emhart's Motion is not in keeping with the purpose of Rule 24 in terms of fostering judicial economy. Rather, Emhart's

intervention would expand the issues before this Court, complicating the matter of entry of the Consent Decrees. Moreover, Emhart can make no valid claim that its participation will in some way assist this Court or contribute to an expeditious disposition of the matter before it. Emhart asserts that it has gained "legal knowledge" litigating a number of Superfund cases and has extensive factual knowledge about the Site. Emhart Memorandum at p. 13. Any general knowledge that Emhart has gained litigating Superfund cases is of no help to the Court in evaluating whether the Consent Decrees are "fair, reasonable, and in keeping with the goals of CERCLA." To the contrary, Emhart's intervention specifically would frustrate Congress' intent of promoting and encouraging settlements. Indeed, the Acorn Court specifically denied permissive intervention under facts similar to those here, stating that "intervention will unduly delay and prejudice the pending adjudication and the rights of the settling PRP's as well as those of the EPA and the public." 221 F.R.D. at 538 n. 19. See also Motorola, 139 F.R.D. at 147 (denying permissive intervention to a non-settling PRP); Beazer East, 22 Chem Waste Lit. Rep. at 225, 1991 WL 557609 at *6 (intervention will unduly delay adoption of the consent decree and implementation of the cleanup). See also Kheel, 972 F.2d at 487 (same).

Emhart already has had a fair opportunity to be heard, through the objections contained in the comments it submitted pursuant to 42 U.S.C. § 9622(d)(2). And, as noted above, this Court has the opportunity to consider Emhart's objections and the response of the United States to those objections in considering the United States' Motion for Entry of the Decrees. See ABC Indus., 153 F.R.D. at 608 (denying permissive intervention). Therefore, Emhart has no legitimate interest that can be advanced through intervention that it did not have an opportunity to advance through the CERCLA notice and comment period under Section 9622(d)(2).

Further, granting leave to intervene on its terms as set forth in Emhart's Motion would significantly prejudice the United States and Settling Defendants here. For example, the amounts that the United States will receive under the settlements depend upon certain variables, such as the interest rate for the mortgages. See Ventura Declaration, ¶ 30. Accordingly, changes in these variables during a delay in approving the settlements, while the Governments and the Settling Defendants address Emhart's discovery requests, could lead to a reduction in the amount that the Settling Defendants are able to pay to the Governments. Nor should Settling Defendants, who have negotiated in good faith, have to wait until resolution of Emhart's objections to learn whether the settlement is final, particularly because CERCLA expressly authorizes the United States to enter into settlements that do not involve all defendants. Cannons, 899 F.2d at 93. As Emhart's proposed intervention would result in prejudice to the parties, and has its interests represented before this Court through CERCLA's notice and comment provision, Emhart should be denied permissive leave to intervene under Rule 24(b)(2).

### D. Should This Court Disagree And Grant Emhart Participation, Such Participation Should Be Narrowly Limited To Challenging The Fairness And Reasonableness Of The Consent Decree

As set forth above, given Emhart's opportunity to participate regarding entry of the lodged Consent Judgment through CERCLA Section 9622(d)(2)'s notice and comment provision, additional participation by Emhart as an intervenor in this matter is unnecessary and redundant. However, should this Court determine to allow Emhart to participate, such participation should be strictly and narrowly limited. See Cannons, 899 F.2d at 85; Charles George Trucking, 34 F.3d at 1085.

This Court has discretion to limit the scope of intervention as of right as well as

permissive intervention. Stringfellow v. Concerned Neighbors In Action, 480 U.S. 370, 382 n.1, n.2 (1987) (Brennan concurring) (upholding restrictions on permissive intervention and intervention of right, respectively); In re Discovery Zone Sec. Litig., 181 F.R.D. 582, 601 (N.D. Ill. 1998) (limiting intervention as of right); Rule 24(a) Advisory Committee's Note to 1966 amendments ("An intervention as of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

If intervention is allowed at all, the Court should only allow Emhart to submit a legal brief in opposition to the United States' Motion to Enter and, should this Court approve the settlements, appeal any such order, but Emhart should not be permitted to conduct discovery. See In re Acushnet, 712 F.Supp. at 1024 (intervener limited to filing certain legal briefs and taking an appeal, but is not permitted discovery).

Emhart principally objects to the settlements because it asserts that the amounts obtained through the Consent Decrees are far less than they should be and also because the United States did not require payments by the individual general partners behind the defendants. Emhart's Memorandum at pp. 3, 8. As a threshold matter, no discovery is needed on whether the Governments properly exercised their discretion and carried out their policies in determining not to require payments from the individual partners. Whether the individual general partners possess substantial assets or minimal assets is not relevant to whether the Governments are entitled to exercise their discretion not to require payments from the individual partners. The United States submits that this decision is within the United States' and the State's discretion and that the Court should decide this question as a matter of law. See United States v. Davis, 261 at

21 ("T]here is deference to the administrative agency's construction of the settlement.") (citations omitted); Charles George Trucking, 34 F.3d at 1085 (Court "must defer heavily to the parties' agreement and the EPA's expertise"); Cannons Eng'g Corp., 899 F.2d at 84 (the court should not engage in "second -guessing the Executive Branch"). Emhart's position that the Governments can be compelled to require payments from the individual partners should be rejected as a matter of law.

Moreover, Emhart specifically claims the need for discovery on the conclusions of the United States' financial expert. Emhart's Memorandum, at note 8, p.8. However, Courts generally deny discovery and evidentiary hearings concerning objections to settlements.[5] See United States v. Kramer, 19 F. Supp.2d 273 (D. N.J. 1998) (discovery unnecessary to determining the fairness of the settlement); Dravo Corp. v. Zuber, 804 F. Supp. 1182, 1187 (D. Neb. 1992), aff'd, 13 F.3d 1222 (8th Cir. 1994) (refused to allow discovery "to challenge a factual basis for the settlement"); Motorola, 139 F.R.D. at 148 (In refusing to allow discovery the Court stated "courts are not required to, and should not, conduct a *de novo* review of all the facts and circumstances considered by the parties"); Kelley v. Thomas Solvent Co., 717 F. Supp. 507,

---

[5] Discovery should also not be allowed because Rhode Island Housing applied its set of underwriting standards in determining the amounts that the Settlors require to maintain the long-term financial and physical viability of the properties and the amount of equity available in the projects. Ventura Declaration, ¶ 21. Rhode Island Housing required here, as in all mortgages that it provides of this kind, that there are sufficient operating and replacement reserves set aside. Id. Rhode Island also commissioned a capital needs assessment and requires that these needs are addressed at the time of the refinancing. Id. Ms. Ventura stated that: "After we have sized the reserves appropriately, identified funds for the capital improvements and set aside funds for transactional costs, the remaining proceeds can be considered as "equity . . . ." Ventura Declaration, ¶ 23. Given Rhode Island Housing's requirements to properly fund reserves and capital needs out of the mortgage proceeds with the remaining proceeds constituting equity, there is no need for discovery into whether the Governments received adequate amounts from the mortgage transactions.

519 (W.D.Mich. 1989) (denying discovery). As the First Circuit explained in a similar environmental matter, "once interveners had the opportunity to file objections, there was little else that could be done" because "[t]o allow evidentiary hearings on the call of any party allowed to intervene would delay, complicate, and perhaps jeopardize the timely resolution of the issues." United States v. Comunidades Unidas Contra La Contaminacion, 204 F.3d 275, 279 (1st Cir. 2000) (affirming lack of hearing in connection with entry of decree). See also Cannons Eng'g, 899 F.2d at 93 (lengthy evidentiary hearings would either frustrate the express intent of Congress to encourage settlement or negate the benefits of settlement); Charles George Trucking, 34 F.3d at 1085 (requiring hearings to review CERCLA settlements would frustrate the statutory objective of expeditious settlement).

As in the cases cited above, discovery and an evidentiary proceeding are not justified here. If intervention were to be granted, the interveners would have a full opportunity to respond to the United States' Motion to Enter the Consent Decrees. Any information allegedly required to develop an opposition to the Consent Decree is already available in the declarations and supporting materials the United States submitted along with its Motion to Enter the Consent Decrees.

In sum, should the Court find that participation by Emhart is appropriate, it must narrowly and strictly limit any such participation.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that Emhart's Motion to Intervene be denied. Alternatively, should this Court decide to grant Emhart participation, the United States respectfully requests that Emhart's intervention be limited exclusively to

responding to the United States' Motion for Entry and appealing any order entering the settlements.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environmental and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

HENRY S. FRIEDMAN
Assistant Section Chief
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

ROBERT CLARK CORRENTE
United States Attorney

By:

LUIS MATOS (R.I. Bar No. 4475)
Assistant United States Attorney
District of Rhode Island
Fleet Center, 50 Kennedy Plaza, 8th Floor,
Providence, Rhode Island 02903
(401) 709-5000

OF COUNSEL:

EVE VAUDO
Enforcement Counsel
U.S. Environmental Protection Agency
New England Region
One Congress St., Suite 1100
Boston, Ma. 02114-2023

CERTIFICATE OF SERVICE

I, Henry S. Friedman, hereby certify that copies of the United States of America's Opposition to Emhart's Motion to Intervene were served on March 10, 2006 by first class mail, postage prepaid, and by electronic mail, as follows:

Laurie Burt, Esq.
Foley Hoag
Seaport World Trade Center
155 Seaport Blvd.
Boston, Ma. 02210-2600
lburt@foleyhoag.com

Richard J. Welch
Moses & Afonso
170 Westminster Street, Suite 201
Providence, R.I. 02903
rwelch@mosesafonso.com

William S. Eggeling
Ropes & Gray LLP
30 Kennedy Plaza
Providence, R.I. 02903
William.Eggeling@ropesgray.com

Howard J. Castleman, Esq.
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Hcastleman@brownrudnick.com

Michael Milito, Esq.
Rhode Island Housing and Mortgage Finance Corporation
44 Washington St.
Providence, RI. 02903
mmilito@rihousing.com

Brian Wagner, Esq.
Rhode Island Department of Environmental Management
235 Promenade Street
Providence, RI. 02908-5767
brian.wagner@dem.ri.gov

Terrence Tierney
Assistant Attorney General
R.I. Department of the Attorney General
150 North Main St.
Providence, R.I. 02903
Ttierney@riag.ri.gov

Jerome C. Muys, Jr.
Swidler Berlin
The Washington Harbour
3000 K. Street, N.W., Suite 300
Washington, D.C. 20007-5116
jcmuys@swidlaw.com

James P. Ray
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
jray@rc.com

______________________________
HENRY S. FRIEDMAN
Assistant Section Chief
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611