**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>BROOK VILLAGE ASSOCIATES<br>LIMITED PARTNERSHIP, and<br><br>CENTERDALE MANOR ASSOCIATES<br><br>Defendants. | ) | No. 05-195S |

**EMHART INDUSTRIES, INC.'S REPLY**
**<u>IN SUPPORT OF ITS MOTION TO INTERVENE</u>**

Emhart Industries, Inc. ("Emhart"), by counsel, respectfully submits this reply in support of its motion to intervene.

Contrary to the assertions in the oppositions filed by the Government and the Defendants, Emhart meets the criteria for intervention of right under Rule 24(a) of the Federal Rules of Civil Procedure, and of permissive intervention under Rule 24(b) and 42 U.S.C. §9613(i). Emhart has a cognizable interest in the litigation that will be irreparably impaired if Emhart is not permitted to intervene. Emhart's interests are not adequately represented by any of the parties. Because of the Government's refusal to provide Emhart and the Court with information necessary to evaluate the proposed Consent Decrees, Emhart should be allowed to intervene and to inquire into their underlying foundation.

**DISCUSSION**

**A. <u>Emhart Has Met the Criteria for Intervention as of Right.</u>**

As the Government recognizes in its opposition, to meet the requirements for intervention as of right, a party must (1) timely file the motion to intervene; (2) demonstrate an interest in the

action; (3) demonstrate that the interest may be impaired by the disposition of the action; and (4) demonstrate that the interest is not protected adequately by the existing parties to the action. Government's Opposition ("Opposition") at p. 5. The Government also recognizes that CERCLA § 113 modifies these requirements by shifting to the Government the burden of showing that the applicant's interests are adequately represented. Opposition, at p. 5 n.2.

In their oppositions, the Government and the Defendants concede that Emhart's motion to intervene is timely, but they contest the other intervention requirements.

1. **Emhart has a Legally Protected Interest in this Action.**

The Government contends that "[t]he sole reason Emhart asserts for seeking intervention is that, if entered, the Decrees would preclude Emhart from seeking contribution from the defendants and their general partners." Opposition at p. 3. That is incorrect. Emhart is seeking intervention for several reasons, including the settlement's impact on its contribution rights against Defendants: (1) In the absence of financial data which the Government has relied on in settling with the two partnerships, Emhart has been unable to assess whether the settlements are fair, reasonable, and comport with the requirements of CERCLA; (2) Emhart is interested in insuring that the settlement parties pay their fair share, and that EPA applies its guidance properly in making determinations that allow PRPs to settle for less than their fair share of response costs; and (3) Emhart's right to seek contribution from the Defendants and their general partners will be eliminated if the Consent Decrees are entered.

Even assuming that Emhart's only interest is the impact on its contribution rights, the Government is mistaken that such an interest is insufficient to support intervention. While there is disagreement among courts on this issue, the more persuasive view is that a contribution right which would be extinguished under a proposed consent decree is a sufficient interest to support a

claim for intervention. As the court stated in U.S. v. Acton Corp., 131 F.R.D. 431 (D.N.J. 1990):

> The Government argues that the ... defendants do not have such an interest because the interest is an 'economic,' as opposed to a 'legally protected' interest, and because the interest is contingent, not direct. This Court disagrees with the Government's position ... This right to contribution will be extinguished against all settling defendants ... if the consent decree is approved. Thus, the ... defendants are not asserting only an economic interest; they seek to protect a statutory right that later may be extinguished.

*Id.* at 433-34. *See also* U.S. v. Union Elec. Co., 64 F.3d 1152, 1167 (8th Cir. 1995) (holding that a claim for contribution under CERCLA is a sufficient interest to allow for intervention because "[t]he interests here may be 'inchoate' to the extent that the value of any contribution claim has not yet been determined, but the interest is nonetheless sufficiently certain once a person has been identified as a PRP to support intervention."); U.S. v. City of Glen Cove, 221 F.R.D. 370, 373 (E.D.N.Y. 2004) (holding that a contribution interest under CERCLA is adequate to sustain intervention and adopting the "Eighth Circuit's sound analysis in Union Electric.").

The rationale behind the leading case in support of Emhart's position is particularly germane. In Union Electric, *supra*, the United States Court of Appeals for the Eighth Circuit overruled the district court's decision not to allow a nonsettling PRP to intervene to contest the entry of a proposed consent decree. The Eighth Circuit began its analysis by noting that CERCLA § 113(i) and Fed. R. Civ. P. 24(a) should be applied on their terms, and rejected the district court's reliance on extraneous policy arguments. Union Elec., 64 F.3d at 1158 ("We find that supplanting the standards applicable to intervention as of right under Rule 24(a) with policy considerations led to the erroneous denial of intervention in this case."). The court then explained that the interest in the right to contribution is established by statute and, therefore, "is ... substantial and legally protectable." *Id.* at 1166. The court found that the interest in contribution is not contingent because §113(f)(1) provides an unconditional right to contribution:

> The interest does not arise only after the daisy-chain of events identified here by the EPA and settling PRPs and in other decisions by other courts as including litigation against the prospective intervenors, a finding of liability against them, and assessment of excessive liability. Rather under the terms of §113(f)(1) itself, the interest arises at any time during or following litigation pursuant to §106 or §107 between persons who are or are *potentially* liable. Thus, no finding of liability is required, nor assessment of excessive liability, before the contribution interest arises. **Only the *recovery* on a contribution claim must await the outcome of this or further litigation, not the right to bring such a claim....** The interests here may be "inchoate" to the extent that the value of any contribution claim has not yet been determined, but **the interest is nonetheless sufficiently certain once a person has been identified as a PRP to support intervention.**

*Id.* at 1167 (bolded emphasis added) (citations omitted). The court made similar findings with respect to the PRPs' interest in challenging the fairness of the allocation. *Id.* at 1168.

Courts concluding that an interest in contribution is insufficient for Federal Rule 24 purposes have relied on a variety of mistaken extraneous considerations. *See, e.g.,* U.S. v. Beazer East, Inc., 1991 WL 557609 at * 3 (N.D. Ohio March 6, 1991); Arizona v. Motorola, 139 F.R.D. 141, 145-46 (D.Ariz. 1991); U.S. v. ABC Indus., 153 F.R.D 603, 607 (W.D. Mich. 1993) U.S. v. Acorn Eng'g Co., 221 F.R.D. 530, 535-537 (C.D. Cal. 2004). The Eighth Circuit cogently rejected any such approach:

> We noted above our disapproval of the district court's reliance primarily on policy arguments instead of on the factors that should be considered in determining whether intervention should be allowed under Fed. R. Civ. P. 24(a)(2) and §113(i) .... Here, CERCLA's intervention provisions unambiguously provide for intervention by "any person" when such person meets the requirements of the statute .... [W]e find reliance for a determination of intervention solely on the basis of the factors identified in §113(i) to be the appropriate course, because we are to apply the factors identified by Congress.

Union Elec., 64 F.3d at 1165-66. *See also* Acton, 131 F.R.D. at 434 ("Section 113(f)(1) of CERCLA vests in 'any person' the right to seek contribution 'from any other person who is liable or potentially liable... during or following any civil action [under CERCLA]'").

Caselaw in this Circuit suggests that the Court of Appeals would agree with the position taken by the Eighth Circuit. In Conservation Foundation of New England v. Mosbacher, 966 F.2d 39 (1st Cir. 1992), the Court of Appeals, in reversing the District Court's refusal to allow a party to intervene to contest a consent order, surveyed the various views of courts with respect to when a party's interest is sufficient to warrant intervention. The Court focused on two compelling considerations. First, the fact that different courts reach different results on this issue "may be explained to some extent by the varied factual situations. The circumstances that exist when individuals litigate private disputes or those governed by state law differ from those where public law disputes affecting federal regulatory programs are at issue." *Id.* at 42. Here, the case involves not simply a private dispute but a federal statute under which governmental oversight is mandated, and under which the Government is purporting to act in the public's interest.

The second compelling consideration the Court recognized is that "the determination of whether an interest is sufficient for Rule 24(a)(2) purposes is colored to some extent by the third factor--whether disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest." *Id.* Here, there can be no question that the entry of the Consent Decrees will impair, indeed destroy, Emhart's ability to seek "fair share" payment from the Defendants and their general partners.

The Government appears to recognize that Mosbacher suggests that the Court of Appeals would concur with the Eighth Circuit's analysis in Union Electric, and its attempts to distinguish the Court of Appeal's decision in Mosbacher are not persuasive. The Government first contends that Mosbacher is distinguishable because the settlement here does not involve implementation of a federal regulatory scheme that impacts a large group, but instead concerns the economic interests of a single business. Opposition at p. 10. This is incorrect, for, as noted above,

Emhart's interest in this litigation is not merely its own economic interests, but also an interest in insuring the fairness of the process and the clean-up of the Site. Moreover, this case involves not only a regulatory scheme but also a statute under which the Government must act to protect human health and the environment.

The Government also asserts that Mosbacher is different from this case because Emhart's contribution claims are contingent. Opposition at p. 10. But given that Emhart has already expended a considerable sum cleaning up the Site, the existence of that claim is not contingent as fully explained in Union Electric; the only thing contingent or uncertain is the final amount of the claim. The Government's argument in this respect borders on the disingenuous. The Government obviously knows that Emhart's claims are more than contingent since it has issued a unilateral administrative order to Emhart and entered into two administrative orders on consent with Emhart to participate in and fund the Remedial Investigation at the Site (which has now cost more than $15 million) as well as the initial steps (which are called "removal actions") in the Site remediation. The Government cannot have it both ways – it cannot seek to curtail Emhart's right to contribution while also claiming that the right does not exist.[1]

The Government also attempts to distinguish In re Acushnet River, 712 F.Supp. 1019 (D. Mass 1989), the case from this Circuit directly on point, by noting that the intervenor challenged EPA's methodology for calculating natural resource damages. Opposition at pp. 9-10. But Emhart, also, has challenged the bases for the calculation of natural resource damages, as well as the amount of response costs to be paid by the settlers. The Government also endeavors to distinguish Acushnet by asserting that the intervenor was not permitted to take discovery,

[1] The Government's attempt to avoid the Union Electric decision by citing to United States v. BP Amoco Oil PLC, 277 F.3d 1012 (8th Cir. 2002), is similarly unavailing. In fact, Amoco supports Emhart's position because in that case the Court was considering a motion to enter a consent decree that was opposed by a party who already had been permitted to intervene.

examine witnesses or take or contest evidence. But the discovery constraints in Acushnet were voluntarily undertaken by the intervenor, and the Court seemed disappointed that the intervenor would not fully participate in the litigation. *Id.* at 1024. ("Although the conditions the Federation voluntarily places on its intervention prevent it from contributing to the factual development of this case, its legal arguments will undoubtedly round out the considerations before this Court as the above discussion regarding the measure of damages makes clear.") (emphasis added). Moreover, in Acushnet, there was no suggestion that any of the parties had withheld data from the court or the intervenor. In stark contrast, discovery is necessary in this matter because the Government has refused to disclose the financial data that purportedly supports its decision to allow the settlors to pay less than their fair share of the projected remedial costs.

Finally, the Government repeatedly cites to CERCLA's purpose of encouraging settlements in order to expedite remedial actions. Opposition at pp. 6, 13, 17. While this may be a factor in some cases, its application is tempered here for two reasons. First, while CERCLA encourages settlements, it does not support them at any cost – it is essential that the Government obtain from a settler a settlement that closely approximates its share of clean-up costs. That has not happened here. Second, the settlement here will have little, if any, bearing on the timing of the clean-up of the Site, since all of the "removal" (*i.e.*, preliminary) clean-up work at the Site has been completed by Emhart and others, and EPA has not yet issued the Feasibility Study (the document that evaluates the range of potential remedies for the Site) or the Record of Decision (the document that specifies the components of the remedy selected for the Site).

**2. Emhart's Interests Are Not Protected by CERCLA's Public Comment Process or by Any of the Parties.**

The Government contends that Emhart's interests in the litigation are protected, not by

the Government in this litigation, but by CERCLA's public comment process. Opposition at pp. 11, 14. As an initial matter, this rationale has been rejected by a number of courts:

> The suggestion that the intervenors had the opportunity to protect their interests in the comment procedures prior to filing of the proposed Consent Decree simply misses the point. The question is not whether the intervenors had any other way of protecting their interests, but whether those interests are protected in this litigation. They are not. … [T]he settling PRPs have interests contrary to those of the non-settling PRPs, because they desire to cut-off the contribution interests of the intervenors. The EPA has already disregarded the interest of the non-settling PRPs by offering the Consent Decree to which the non-settling PRPs objected during the comment procedures. Both the existing plaintiffs and existing defendants have an interest in entry of the Consent Decree that is contrary to the interest of the intervenors who oppose entry of the Consent Decree on the ground that it is unfair to them.

Union Elec., 64 F.3d at 1169-70 (citations omitted); *See also* U.S. v. City of Glen Cove, 221 F.R.D. 370 (E.D.N.Y. 2004) ("However, by the U.S.'s own admission, it does not appear that TDY's contribution interest would be adequately protected through CERCLA's public review and comment process.").[2]

Even if, arguendo, the public comment process could potentially suffice to protect a party's interests in some circumstances, the process here was fatally flawed. The Government has refused to provide Emhart with the financial data needed to adequately comment on the proposed Consent Decrees. Moreover, the Government misses the point – that, absent intervention, the Court will not have the benefit of an intervenor's analysis of that data and its application in the context of EPA's ability-to-pay guidance documents.

Any argument that the Government has adequately represented Emhart's interest is

[2] If Congress had felt that the comment process was sufficient public input, it would not have enacted Section 113(i), which gives any person the right to intervene when they satisfy the requirements of this provision. If the Government were free to file against and settle with individual PRPs, one by one, without the threat of intervention of other PRPs who have not yet been sued, the right of intervention granted under Section 113 would be rendered meaningless.

simply unavailing. Aside from the fact that the Government and Emhart are obviously at odds over the sufficiency of the settlement, *see* Acushnet 712 F.Supp. at 1023 (holding that differences in measure of damages sought are substantial and therefore intervenor's interests are not adequately represented), the Court of Appeals has held that evidence that suggests that the existing parties "are 'sleeping on their oars' or 'settlement talks are underway' may be enough to show inadequacy." Mosbacher, 966 F.2d at 44. Here, settlement talks are not just underway, they were completed before the litigation was even commenced.

Finally, the Government asserts that it need not provide to Emhart or the Court any financial information about the general partners because as a matter of law that information is unnecessary for the Court to determine whether the Government's decision not to require payments from the partners was an abuse of discretion or contrary to the law. Opposition at p. 16. This argument fails. Neither Emhart nor the Court can assess the adequacy of the Consent Decrees, including the Government's decision to release the general partners, without considering their financial wherewithal, an analysis that turns on the underlying factual information upon which the Government's decision was based.

Similarly, in their opposition, the Defendants contend that they have provided extensive information to the United States and the State of Rhode Island concerning the finances of the respective partnerships which own the two apartment buildings. Defendants' Opposition, at p. 2. But the Government has not only refused to provide Emhart and the Court with those documents; it has also failed to adduce any analysis as to why it declined to consider the finances of the General Partners and it asserts, albeit incorrectly, that it is not required to do so.[3]

---

[3] The Defendants make the preposterous argument that the Defendants' finances, and those of their general partners, are not relevant and cannot lead to the discovery of admissible evidence. Defendants' Opposition at p. 2 n.1. Given that the Government rests its motion to enter the

B. **Emhart has Met the Criteria for Permissive Intervention.**

The Government contends that Emhart cannot meet the elements of permissive intervention under Rule 24(b). Opposition at pp. 12-15. As an initial matter, the Government concedes that Emhart's application is timely, that CERCLA provides a conditional right to intervene, and that Emhart's claims involve questions of fact and law in common with the pending matter. Nevertheless, the Government argues that (1) allowing intervention would prejudice the existing parties to the litigation because the parties have engaged in extensive settlement discussions which could be undermined if Emhart's intervention is granted; (2) Emhart's intervention would complicate the case and expand the issues before this Court; (3) Emhart's participation will not assist the Court in any way; (4) Emhart's intervention would be contrary to CERCLA's goal of promoting settlement; and (5) any delay in the settlement would significantly prejudice the settling parties.

The first argument is a red herring because the settlement was already agreed upon prior to the filing of the lawsuit. The case has been effectively stayed since that time and no discovery has taken place. Under the Government's flawed reasoning, intervention would be precluded in any situation where the Government files a complaint along with a proposed consent decree. That result would vitiate the intervention provisions of CERCLA and the Federal Rules.

Emhart's intervention would not unduly complicate the case or expand the issues before the Court. The Court will need to consider whether the proposed Consent Decrees meet the standard of review regardless of Emhart's participation. If anything, allowing intervention of a

---

consent decrees on its assessment of the Defendants' ability to pay, those finances are indisputably the most essential information needed by Emhart and the Court when considering the Consent Decrees. Indeed, if that information is not relevant, why did the Government require that information from the defendants and why did the Defendants provide it? All of this, of course, raises the fundamental question of why the Government and the Defendants are so adamant about keeping this information from Emhart and from the Court.

third-party which opposes those decrees will give the Court the benefit of added insights not presented by the existing parties.

Contrary to the Government's assertion, Emhart's intervention is not at odds with CERCLA's goals of facilitating settlement. The Union Electric court rejected such an argument out of hand:

> The EPA and settling PRPs stress a supposed conflict between allowing intervention under §113(i) to protect contribution claims under §113(f)(1) and the intent of §113(f)(2) to induce prompt settlement. There is no contradiction among these provisions requiring resort to legislative intent. This court finds that all can be read together and each given its proper effect. Under this reading, the incentive to prompt settlement in §113(f)(2) remains intact; it simply is not the sole purpose of §113 taken as a whole. By its terms, subsection 113(f)(1) provides for contribution, subsection 113(f)(2) provides for the termination of that interest as to settling PRPs, and subsection 113(i) provides for intervention to protect that and other interests of persons affected by the litigation.

64 F.3d at 1165-66. Moreover, while CERCLA certainly encourages settlement, it does not do so at the cost of giving parties their fair day in court and allowing those parties, and the Court, fully to consider the basis for any proposed Consent Decrees.

Finally, the Government contends that the parties will be prejudiced by any delay in the settlement because, for example, interest rates and other variable expenditures may increase as time passes. This is the purest of speculation. Moreover, the Government waited many years since first discovering hazardous substances at the Site before proposing the settlement with the Defendants. Any incremental delay in considering the Government's motion to enter the Consent Decrees will be de minimis, will not prejudice anybody, and will be more than offset by the benefit of giving Emhart an opportunity to evaluate the proposed settlement and provide the Court with a complete analysis.

For all these reasons, Emhart should be permitted to intervene in this action.

**C. <u>In Light Of The Government's Refusal To Provide Critical Information, Emhart's Participation Should Not Be So Narrowly Limited As To Be Meaningless.</u>**

The Government argues that if intervention is granted, Emhart should not be permitted to take any discovery. Opposition, at pp. 15-17. Aside from the fact that this approach creates a "fox guarding the henhouse" scenario where only the parties supporting the Consent Decrees are allowed to review the underlying factual basis for the settlement, the Government's argument also misapprehends the law in this Circuit. "[T]he approval process is more than a mere formality. The Court does not serve simply as a rubber stamp that automatically places its imprimatur on the proposed settlement. Rather, the Court must make an independent judgment as to whether the proposed settlement is fair and reasonable." United States v. Davis, 11 F. Supp. 2d 183, 189 (D.R.I. 1998), citing United States v. Cannons Eng'g Corp., 899 F.2d 79, 89-90 (1st Cir. 1990).

Indeed, CERCLA Section 122 was adopted to prevent abuses that had occurred in earlier CERCLA settlements. "Sweetheart deals of the sort exposed by the Committee's investigations of earlier Superfund management abuses would be prevented, by requiring all voluntary agreements to be filed as consent degrees [sic] with the Federal District Court. Further, the court could review the agreement, with citizen participation, to insure that it is in the public interest." Report of the Committee on Energy and Commerce to accompany H.R. 2817, Rept. 99-253 Part 1, 99th Cong. 1st Sess., Aug. 1, 1985.

Here, absent intervention, the Court cannot make an informed judgment as to the fairness of the proposed settlement because of the closed-door process under which the parties have thus far operated. One must wonder why the Government is so fearful of shedding daylight onto this opaque process, including its refusal to consider the finances of the general partners who are behind the Defendants -- a refusal that is at odds with its own policy guidance -- and its failure to

consider the role played by the Defendants in exacerbating conditions at the Site.

For Emhart and the Court to consider the Consent Decrees adequately, additional information is needed, including information and documents reviewed by the economic advisor to the EPA, as listed in Appendix A to the Declaration of Joan K. Meyers; the audited financial statements for fiscal years ending February 28 (29), 2004 and 2005; and financial statements of the general partners of each defendant. Until this information is made available, a complete evaluation cannot be performed of whether the proposed settlements are fair, reasonable and conform to the requirements of CERCLA.

## CONCLUSION

For all these reasons, Emhart's motion to intervene should be granted and Emhart should be granted a short period in which to conduct precisely targeted but thorough discovery into the financial underpinnings of the proposed Consent Decrees.

Respectfully submitted,
EMHART INDUSTRIES, INC.

By Its Attorneys,

[signature] 3/27/06

Craig M. Scott, Esq. (#4237)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Of Counsel:

Warren Anthony Fitch, Esq.
Jerome C. Muys, Jr., Esq.
L. Misha Preheim, Esq.
Bingham McCutchen LLP
3000 K Street, NW, Suite 300
Washington, DC 20007
(202) 424-7500
(202) 295-8478 (Facsimile)

**CERTIFICATE OF SERVICE**

TO:

Jerome MacLaughlin, Esq.
Trial Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
jerry.maclaughlin@usdoj.gov

Eve Vaudo, Esq.
Enforcement Counsel
U.S. Environmental Protection Agency
New England Region
One Congress Street
Suite 1100 (SES)
Boston, MA 02114-2023
vaudo.eve@epamail.epa.gov

Laurie Burt, Esq.
Foley Hoag
Seaport World Trade Center
155 Seaport Blvd.
Boston, MA 02210-2600
lburt@foleyhoag.com

Richard J. Welch
Moses &Afonso
170 Westminster Street, Suite 201
Providence, RI 02903
rwelch@mosesafonso.com

William S. Eggeling
Ropes & Gray LLP
30 Kennedy Plaza
Providence, RI 02903
William.Eggeling@ropesgray.com

Howard J. Castleman, Esq.
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Hcastleman@brownrudnick.com

Michael Milito, Esq.
Rhode Island Housing and Mortgage Finance Corporation
44 Washington Street
Providence, RI 02903
mmilito@rihousing.com

Brian Wagner, Esq.
Rhode Island Department of Environmental Management
235 Promenade Street
Providence, RI 02908-5767
brian.wagner@dem.ri.gov

Terrence Tierney
Assistant Attorney General
RI Department of the Attorney General
150 North Main Street
Providence, RI 02903
Ttierney@riag.ri.gov

James P. Ray
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
jray@rc.com

I certify that on the 27 of March, 2006, I caused a true copy of the within Reply in Support of Motion to Intervene to be forwarded to the above listed parties by electronic and First Class Mail.