UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP, ET AL.,<br>Defendants. | CIVIL ACTION No. 05-195S |

**SETTLING DEFENDANTS' PROPOSED DOCUMENT PRODUCTION AND SCHEDULE FOR HEARING ON ENTRY OF CONSENT DECREES**

Pursuant to the Court's request made at the hearing held on April 3, 2006, Settling Defendants Brook Village Associates Limited Partnership ("Brook Village") and Centerdale Manor Limited Partnership ("Centerdale Manor") file this proposal regarding the review of settlement documents and a schedule for hearing on the United States' pending Motion to Enter Proposed Consent Decrees.

As discussed more fully below, Emhart's proposal is too broad -- improperly seeking documents (and a role for itself as intervenor) which are inconsistent with the proper standard of judicial review delineated by the First Circuit. See, e.g., United States v. Charles George Trucking, 34 F.3d 1081, 1084 (1st Cir. 1994) (affirming the standard as stated in *Cannons* that "CERCLA consent decrees must be reasonable, faithful to the statute's objectives, and fair (both procedurally and substantively"). As an intervenor, Emhart may be permitted to brief and argue whether the settlement is "procedurally fair" (e.g., Emhart complains that it was not allowed to participate in the settlement negotiations), whether the settlement is "substantively fair" (e.g., Emhart complains that, following the settlement, it will face disproportionate liability for the

response costs) and whether the settlement is consistent with CERCLA (e.g., Emhart complains that the settlement provides insufficient funds to pay for the clean-up.) In addition, as intervenor, Emhart may be allowed to appeal from any adverse judgment. Emhart, however, may not be permitted to lead this Court through a *de novo* review of EPA's interpretation and application of its own peripheral party and ability-to-pay guidances, RI Housing's interpretation and application of its underwriting standards for Preservation Refinancings, or EPA's exercise of discretion to reach early settlements with peripheral parties, such as the Brook Village and Centerdale Manor elderly housing projects, and to avoid litigation risks and related costs. Because Emhart's proposal attempts to do just that, it should be rejected by this Court.

**STANDARD OF REVIEW**

It is well-settled that the standard by which courts should review a consent decree under CERCLA is to determine whether the settlement reached by the parties is fair, reasonable, and consistent with the goals of the Act.[1] Certainly, the courts' review should not amount to merely a rubber stamp.[2] The level of judicial scrutiny does, however, acknowledge the effort expended by EPA and the State in areas of their own particular expertise in this complex, multi-disciplined arena of CERCLA law, policy and cleanups to reach these agreements. As a result, the court's inquiry focuses on the factors forming the basis for settlement to determine whether the ultimate agreement is fair and reasonable based on those factors. Thus, the standard of review does not

[1] *See* United States v. Davis, 261 F.3d 1, 21 (1st Cir. 2001) (affirming the standard applied by the District Court that the settlement be procedurally and substantively fair, reasonable, and consistent with the objectives of CERCLA), United States v. Charles George Trucking, 34 F.3d at 1084 (affirming the standard as stated in *Cannons* that "CERCLA consent decrees must be reasonable, faithful to the statute's objectives, and fair (both procedurally and substantively."), United States v. Cannons, 899 F.2d 79, 84 (1st Cir. 1990) ("The relevant standard, after all, is not whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute."), *In re* Acushnet River & New Bedford Harbor, 712 F.Supp. 1019, 1027-28 (D. Mass. 1989) ("Before approving such a settlement, this Court must ascertain 'that it is fair, adequate, and reasonable, and consistent with the Constitution and the mandate of Congress'") *quoting* City of New York v. Exxon Corp., 697 F. Supp. 677, 692 (S.D.N.Y. 1988).

[2] United States v. Cannons Eng'g Corp., 720 F. Supp. 1027, 1035 (D. Mass. 1989), aff'd, 899 F.2d 79 (1st Cir. 1990), ("While the district court should not mechanistically rubberstamp the agency's suggestions, neither should it approach the merits of the contemplated settlement *de novo*.").

seek to replicate the detailed analysis and negotiation completed by those government agencies. Courts have consistently held that review of CERCLA consent decrees therefore should not require discovery and an evidentiary hearing, which would ostensibly duplicate EPA's deliberative process.[3] More appropriately, review should amount to an act of judicial oversight to ensure that the United States acted fairly, reasonably, and in the public interest in its settlement with any PRPs.

**SETTLEMENT RATIONALE AND DOCUMENTATION HAVE BEEN PROVIDED**

Mindful of this standard of review, the United States made a comprehensive filing in this case, clearly articulating their methodology and rationale for settlement with Brook Village and Centerdale Manor as well as their calculation method. The United States' Motion to Enter was filed with extensive supporting memoranda and attached documents totaling 127 pages, including a 43 page memorandum discussing the history of the site, summarizing its due diligence of Brook Village and Centerdale Manor's situation and detailing the method and rationale employed to reach the settlement agreements. The government also included the 19 page Declaration of Joan K. Meyer, an independent consultant and expert in environmental economics and finance, summarizing in detail her analysis used to determine Brook Village and Centerdale's financial condition and ability to pay, through refinancing and the resulting conversion of equity in the elderly apartments into cash for these CERCLA settlements, while still preserving the two elderly housing programs. The submission also included the nine page Declaration of Carol Ventura, Director of Rhode Island Housing and Mortgage Finance

---

[3] See United States v. Comunidades Unidas Contra La Contaminacion, 204 F.3d 275, 279 (1st Cir. 2000) ("To allow evidentiary hearings on the call of any party allowed to intervene would delay, complicate, and perhaps jeopardize the timely resolution of the issues. After all, the decree to be approved was a consent decree; sophisticated adverse parties, represented by their top professionals in dealing with environmental problems, had found common ground."), Charles George, 34 F.3d 1081, 1085 (1st Cir. 1994) ("The district court did not err in declining to hold an evidentiary hearing to delve into matters of efficacy. Requiring hearings to review the reasonableness of CERCLA consent decrees as a matter of course would frustrate the statutory objective of expeditious settlement."), Cannons, 899 F.2d 79, 93(1st. Cir. 1990) ("Appellants complain that the district court erred in failing to hold an evidentiary hearing on the suitability of the consent decrees. They are wrong.").

Corporation ("RI Housing"). Her declaration details the role of that agency in the settlement process and how the refinancing of the two projects through the RI Housing Preservation Program was determined according to standard Rhode Island Housing policies, underwriting guidelines, and regulations, so as to produce significant contributions to the site cleanup while maintaining the property as affordable housing. Furthermore, in EPA's 24 page Responsiveness Summary submitted with the United States' Motion, EPA provided detailed replies to each and every concern raised during the notice and comment period, including responses to all concerns raised by Emhart.

This consent decree is the result of the United States' consideration of two long-standing EPA policies--to engage in early settlement with parties who have a limited ability to pay, and to settle early with parties for whom the imposition of protracted CERCLA litigation and unresolved liability would pose an "extreme burden and for whom equitable and public interest considerations argue in favor of speedy settlement." [4] As the court is aware, these particular settlements required the careful balancing of two public interests--ensuring funds for the cleanup of the Centredale Superfund Site and maintaining the Brook Village and Centerdale Manor projects as affordable housing. Considering these interests, the United States has relied upon its authority under CERCLA and its policies that support early settlement with peripheral parties, particularly parties falling within the PRP categories of a demonstrated limited ability to pay and/or extreme burden and compelling equitable/public interest considerations. The United

[4] EPA Guidance on Administrative Response Cost Settlements under Section 122(h) of CERCLA and Administrative Cashout Settlements with Peripheral Parties under Section 122(h) of CERCLA and Attorney General Authority ("Peripheral Parties Guidance") at 8 (September 30, 1998). *See also* EPA General Policy on Superfund Ability to Pay Determinations (September 30, 1997)("1997 ATP Guidance"), EPA Interim Guidance on the Ability to Pay and De Minimis Revisions to CERCLA § 122(g) by the Small Business Liability Relief and Brownfields Revitalization Act, (May 17, 2004) ("2004 ATP Guidance").

States has fully explained its application of those policies and the unique circumstances of this particular case in crafting these two settlements.[5]

**RESPONSE TO EMHART'S REQUEST FOR DISCOVERY**

Despite the United States' extensive filing, Emhart wants more. In fact, Emhart now proposes even more expansive discovery than the documents requested in its Motion to Intervene and recent Reply Brief.[6] Far from the spirit of reasonableness advanced in baseball arbitration, as suggested by the Court, Emhart has scaled up its request to absurd extremes, asking, for example, for the United States' entire confidential settlement file and communications. Emhart also seeks interrogatory-like explanations of multiple line items of CPA-audited financials and RI Housing's mortgage interest rates.[7] Such requests are excessive, inappropriate and should not be allowed.

Emhart's alleged "concerns" are not new, and have been fully addressed by the EPA in its Responsiveness Summary. These old concerns do not justify opening judicial review of the settlements to full scale discovery and evidentiary hearings. To allow such unprecedented discovery would imbue a single non-settling PRP with the right to adjudicate the government's settlement analysis. To do so would disrupt CERCLA's clear intent to encourage early settlements by EPA in appropriate cases. The United States has made more than full and fair disclosure of its rationale for these settlements. Additional discovery is not necessary for Emhart to argue its objections to these Consent Decrees.

---

[5] *See* U.S. Environmental Protection Agency's Response to Comments on Proposed Consent Decrees ("Responsiveness Summary") 10-12, 15-16 (February 2006). In issuing these settlement guidances, EPA has made clear that they are not regulations, but are to be used as a framework for peripheral party settlements. Peripheral Parties Guidance at 2 (September 30, 1998). *See also* 2004 ATP Guidance, (May 17, 2004).

[6] *See* Emhart Reply In Support of its Motion to Intervene at 13, Emhart Motion to Intervene at 8.

[7] Emhart Submission on Scope of Documentation at 9. Emhart's renewed request for discovery of the general partner's personal assets has been asked and answered, not only by the parties, but also by this Court. At the recent hearing on April 3rd, Emhart's counsel conceded that it had sufficient information to make its objections to the governments' decision, in its discretion and for policy reasons, not to pursue the assets of individual general partners. Emhart does not need discovery to argue this point as a question of law.

**PROPOSED ADDITIONAL SETTLEMENT MATERIALS AND SCHEDULE**

In the spirit of baseball arbitration, Brook Village and Centerdale Manor do not object to Emhart's review of the most recent audited financials for the projects, which have already been produced by RI Housing.[8] Settling Defendants further agree to the United States' production of the audited financials for the five years dating from 1999-2003 for both projects. In addition, while duplicative and unnecessary to Emhart's objections to the settlements, Brook Village and Centerdale Manor will support disclosure of the two Rhode Island Housing pro formas relied upon by Joan Meyer, which were also summarized in her Declaration.[9] Emhart, however, should not be allowed to lead this Court through rounds of "second guessing" the manner in which RI Housing operates its Preservation Refinancing Program.

Finally, Brook Village and Centerdale Manor support the schedule proposed by the United States for production of the foregoing settlement documents, and for final briefing and oral argument on the merits of these two settlements and Consent Decrees.

[8] Contrary to Emhart's assertion, EPA's expert, Joan K. Meyer, fully considered the six most recent years of audited financial statements for Brook Village and Centeredale Manor, including those completed in 2004 and 2005. See Declaration of Joan Meyer ("Meyer Declaration") at footnotes 3, 6."

[9] Meyer Declaration at App. C (*pro formas* dates July 6, 2004 for Brook Village and November 11, 2004 for Centerdale Manor), *See also* App. B, C.

BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP

By its attorneys,

William S. Eggeling (RI Bar #4008)
Ropes & Gray LLP
30 Kennedy Plaza
Providence, RI 02903
(401) 455-4400
William.Eggeling@ropesgray.com

Howard J. Castleman (Pro Hac Vice)
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
howard.castleman@hklaw.com

CENTERVILLE MANOR LIMITED PARTNERSHIP

By its attorneys,

Richard J. Welch, Esq. (RI Bar #4497)
Moses Afonso Jackvony, Ltd.
170 Westminster Street, Suite 201
Providence, RI 02903
Phone: (401) 453-3600
Fax: (401) 453-3604
rwelch@mosesafonso.com

Laurie Burt, Esq. (Pro Hac Vice)
Seth D. Jaffe, Esq. (Pro Hac Vice)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
Phone: (617) 832-1000
Fax: (617) 832-7000
lburt@foleyhoag.com

Dated:

CERTIFICATE OF SERVICE

I, Stephen Izzi, hereby certify that copies of the Settling Defendants' Proposed Document Production And Schedule For Hearing On Entry Of Consent Decrees was served on April 20, 2006 by first class mail, postage prepaid, and by electronic mail, as follows:

Jerome W. MacLaughlin
Trial Attorney
Environmental Enforcement Section
Environmental and Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
jerry.maclaughlin@usdoj.gov

Eve Vaudo
Enforcement Counsel
U.S. Environmental Protection Agency
New England Region
One Congress St., Suite 1100
Boston, Ma. 02114-2023
vaudo.eve@epamail.epa.gov

Laurie Burt
Foley Hoag
Seaport World Trade Center
155 Seaport Blvd.
Boston, Ma. 02210-2600
lburt@foleyhoag.com

William S. Eggeling
Ropes & Gray LLP
30 Kennedy Plaza
Providence, R.I. 02903
William.Eggeling@ropesgray.com

Howard J. Castleman
Holland & Knight LLP
10 St. James Avenue
11th Floor
Boston, MA 02116
howard.castleman@hklaw.com

Michael Milito
Rhode Island Housing and Mortgage Finance Corp.
44 Washington St.
Providence, RI. 02903
mmilito@rihousing.com

Brian Wagner
Rhode Island Department of Environmental Management
235 Promenade Street
Providence, RI. 02908-5767
brian.wagner@dem.ri.gov

Terrence Tierney
Assistant Attorney General
R.I. Department of the Attorney General
150 North Main St.
Providence, R.I. 02903
Ttierney@riag.ri.gov

Jerome C. Muys, Jr.
Swidler Berlin
The Washington Harbour
3000 K. Street, N.W., Suite 300
Washington, D.C. 20007-5116
jcmuys@swidlaw.com

Craig Scott
Duffy Sweeny & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
cscott@duffysweeney.com

James P. Ray
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
jray@rc.com

Stephen Izzi, Esq.
Moses Afonso Jackvony, Ltd.
170 Westminster Street, Suite 201
Providence, RI 02903
Phone: (401) 453-3600
Fax: (401) 453-3604