UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP; et ano.<br>Defendants. | CIVIL ACTION No. 05-195S |

**MEMORANDUM CONCERNING CONFIDENTIALITY OF SETTLEMENT COMMUNICATIONS**

Pursuant to this Court's May 4, 2006 Order (par. 2), the Settling Defendants[1] joined by Rhode Island Housing and Mortgage Finance Corporation ("Rhode Island Housing"), submit this memorandum in support of withholding from production to the limited intervenor Emhart Industries ("Emhart") the confidential settlement communications exchanged among the Settling Defendants, the United States and Rhode Island Housing in connection with the Consent Decrees pending before the Court. The communications are listed on the attached confidentiality log and have been provided to the Court for *in camera* review.

As discussed more fully below, the United States, with the cooperation of the Settling Defendants, has already produced to Emhart copies of the Consent Decrees and over 11,200 pages of supporting materials. These materials include all the financial information referenced in the Declaration of Joan Meyers, EPAs' financial expert, as well as the Settling Defendant's

[1] Defendants Brook Village Associates Limited Partnership ("Brook Village") and Centerdale Manor Limited Partnership ("Centerdale Manor").

responses to EPA's 104(e) CERCLA information requests.[2] The limited remaining information described in the Confidentiality Log represents confidential settlement communication between the parties in reaching the proposed settlements and Consent Decrees. It would be inconsistent with the parties' justified expectations of confidentiality, and improperly chill settlement negotiations in CERCLA proceedings, if settlement communications exchanged by the EPA and the settling PRPs under an express agreement of confidentiality were produced to an adverse third party. Therefore, the Settling Defendants request the Court, pursuant to Fed. R. Civ. Proc. 26(c), to except from production of settlement materials the confidential settlement communications identified on the Confidentiality Log.

## ANALYSIS

### I. This Court Should Except From Production the Confidential Settlement Communications among the Settling Defendants, EPA and Rhode Island Housing

Rule 26(c) of the Federal Rules of Civil Procedure provides the Court with wide latitude in designing protective orders. *See* Fed. R. Civ. P. 26(c); *see also Poliquin* v. *Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993). Indeed, "Rule 26(c) generously permits 'for good cause shown' the making of 'any order which justice requires' to protect against annoyance, embarrassment or under burden occasioned by discovery." *Poliquin*, 989 F.2d at 532. The Court has broad discretion to decide "'when a protective order is appropriate and what degree of protection is required.'" *Poliquin*, 989 F.2d at 532 (*citing Seattle Times Co.* v. *Rhinehart*, 467 U.S. 20, 36 (1984)). Great deference is shown to Courts in framing and administering protective orders. *See id.*

In the present case, in an effort to settle purported liability under CERCLA, the Settling Defendants and the EPA entered into a series of negotiations that ultimately lead to execution of

---

[2] These materials, including tax returns, financial statements, and insurance policies, and other documents containing confidential business information are being furnished to Emhart subject to a confidentiality order agreed to by all parties and filed earlier today with the Court. Remaining materials, the confidential settlement communications listed on the attached confidentiality log, are not being produced as discussed below.

the Consent Decrees. The EPA and the Settling Defendants expressly agreed that the negotiations would be kept confidential. Practically every written communication, both letters and emails, were marked "Confidential – For Settlement Purposes Only," or other similar legend acknowledging that the information was being exchanged for the purposes of attempting settlement and on a confidential basis. For example, letters and emails from the Settling Defendants to EPA expressly stated that the communications were being made on a confidential basis for settlement purposes only. *See, e.g.,* Confidential Log Item Nos. 1 (from Brook Village to EPA) and 36 (from Centerdale Manor to EPA). EPA agreed to entering these settlement negotiations on a confidential basis and expressly stated in EPA's letters and emails to the Settling Defendants that its settlement communications to them were confidential. *See, e.g.*, Confidential Log Item Nos. 6 (EPA to Brook Village) and 82 (EPA to Centredale Manor, Brook Village and Rhode Island Housing). EPA also sought permission from the Settling Defendants before sharing the confidential information with the Rhode Island Department of Environmental Management ("RIDEM"), which was also involved in the settlement negotiations. *See, e.g.*, Confidential Log Item Nos. 7, 8 and 41. See also Log Item Nos. 68 and 69.

The settlement materials exchanged between the parties on a confidential basis included the Settling Defendants' settlement proposals, several questions and answers, analyses of litigation and financial risks, equitable considerations, compromise and alternative settlement positions, and assessments of insurance coverage. The communications also included preliminary draft Rhode Island Housing refinancing pro formas that reflect compromises reached by the parties in an effort to conclude the settlement. Rhode Island Housing, a signatory to the Consent Decrees, considers these preliminary draft settlement pro formas as non-public documents, excepted from production under the Rhode Island Access to Public Records Act as preliminary draft working papers. See R.I. G.L. Section 38-2-2(4)(K).

Requiring production of these confidential settlement communications in these proceedings would be inconsistent with the parties' justified expectations of confidentiality, and would improperly "chill" settlement negotiations in CERCLA proceedings. CERCLA seeks to provide EPA with the necessary tools to achieve prompt cleanups. *United Technologies Corp.* v. *Browning-Ferris Indus., Inc.* 33 F.3d 96, 103 (1st Cir. 1994) (*citing United States* v. *Cannons Engineering Corp.*, 899 F.2d 79, 90-91 (1st Cir. 1990)). "One such tool is the ability to foster incentives for timely settlements." *Id.* Indeed, CERCLA "was designed to encourage settlements and provide PRPs a measure of finality for their willingness to settle." *Id.* At 103. Significantly, in creating the statutory framework for CERCLA to facilitate the cleanup of contaminated properties throughout the country, Congress devoted an entire section of the law to settlements. *See* CERCLA Section 122, 42 U.S.C. § 9622.

The settlement process under CERCLA has a private side and a public side. On the private side, the EPA and the Settling PRPs meet to negotiate settlement, discussing the strength and weaknesses of the Settling Defendants' purported liability and defenses under CERCLA, and of potential claims against non-settlors, such as Emhart, exchanging settlement proposals, and offering compromises in order to reach a settlement. Often, such as is the case here, EPA and the Settling PRPs exchange this information under express agreements to keep the settlement communications confidential. Non-Settling Defendants are not entitled to be present during these settlement discussions.

On the public side of the CERCLA settlement process, the United States seeks judicial approval of the settlement by filing a copy of the consent decree in Court, providing public notice and an opportunity to comment, and then moving the Court for entry of the Consent Decree. In the present case, the United States publicly filed with the Court over 120 pages of documents, including a 42 page memorandum, a 45 page responsiveness summary and appendix, and approximately 30 pages of affidavits and additional supporting materials. The Court

allowed Emhart a righted to limited intervention, as well as a limited right to disclosure as part of the judicial approval process. In connection therewith, Emhart is receiving over 11,200 pages of additional documents.

Permitting Emhart to obtain the confidential settlement communications between EPA and the Settling Defendants is not necessary for the public side of the process, including the judicial approval, and would constitute an unwarranted intrusion into the private, confidential, side of the negotiation process between EPA and the Settling Defendants. It would be manifestly unfair to the Settling Defendants for their confidential settlement communications to be provided to Emhart, which remains adverse to them and which could use the information against the Settling Defendants in later proceedings should these Consent Decrees not be entered as final. In addition, requiring production of settlement communications, even where the EPA and the Settling Defendants have expressly agreed to keep the settlement communications confidential, would impair the exchange of information and ideas that are a necessary part of a successful negotiation process. In light of CERCLA's goal of favoring settlement of Superfund litigation, and in view of the express agreement by EPA and the Settling Defendants, this Court should protect the confidential settlement communications in this case from being produced to the limited intervenor Emhart.[3]

As this Court noted in *United States* v. *Davis*, "CERCLA does not require an exhaustive and detailed recitation of every fact relating to the settlement. The parties need only present the terms of the agreement and facts sufficient to enable one to determine whether the proposed 'settlement is reasonable, fair and consistent with the purposes that CERCLA is intended to

---

[3] The decision in *Bennett* v. *La Pere*, 112 F.R.D. 136 (D. RI 1986) does not compel a contrary result. That case involved the production of the settlement agreement itself, not the confidential negotiations that preceded the settlement. In *Bennett*, without access to the settlement agreement, the non-settling defendant was unable to evaluate its entitlement to a pro rate reduction under Rhode Island's joint tortfeasor statute, and unable to argue that it was released under the terms of the settlement agreement. In the present case, Emhart has already received copies of the Consent Decrees, is fully aware of its terms, has also received over 11,200 pages of background materials, and is fully able to evaluate the reasonableness of the settlement under the standard set forth in *United States* v. *Cannons*.

serve.'" *United States* v. *Davis*, 11 F. Supp.2d, 183, 194 (D. RI 1998) (citing *United States* v. *Cannons Engineering Corp.*, 899 F.2d at 85), *aff'd* 261 F.3d 1 (1st Cir. 2001). In light of the role of judicial review under CERCLA, and the limited scope of Emhart's intervention this court should exclude from production the confidential settlement communications between EPA and the Settling Defendants.

Notably, one federal appellate court, the Sixth Circuit, has recognized a federal settlement privilege that protects from third-party discovery all communications made during settlement negotiations. *Goodyear Tire & Rubber Company,* v. *Chiles Power Supply, Inc.*, 332 F.3d 976, 981-83 (6th Cir. 2003). In that case, homeowners who had purchased a heating system intervened in an action between the heating system manufacturer and a rubber hose manufacturer to permit discovery of any statements made by those parties during settlement talks. The Sixth Circuit, applying the reasoning of *Jaffee* v. *Redmond,* 518 U.S. 1 (1996), recognized the existence of a blanket federal settlement privilege and ruled that, as a matter of federal law, settlement communications were not discoverable by third parties. *Id.* at 981-83.[4]

In the present case, this Court need not go so far as holding, as a matter of law, that all settlement communications are privileged under FRE 501.[5] Rather, the Court may adopt a flexible analysis under Fed. R. 26(c) to determine whether, under the facts of this case, confidential settlement communications should be protected from disclosure to a third party.[6]

---

[4] *But see Folb* v. *Motion Picture Indus. Pension & Health Plans*, 16 F. Supp.2d 1164, 1180 (C.D. Cal. 1998) (declining to extend scope of settlement privilege under FRE 501 to communications outside formal mediation process).

[5] The Settling Defendants do note, however, that recognizing a federal settlement privilege in this case is consistent with the Supreme Court's reasoning in *Jafee*: Such a privilege, for example, is "rooted in the imperative need for confidence and trust" during efforts to reach a negotiated compromise; would "serve public ends" in fostering settlement of CERCLA litigation; and the denial of the privilege would produce little probative evidence concerning the overall reasonableness of the settlement, as opposed to indulging in the "exhaustive and detailed recitation of every fact relating to the settlement" condemned by this Court in *United States* v. *Davis*, 11 F. Supp.2d at 194.

[6] The United States has informed the Settling Defendants that it does not support judicial recognition of a blanket federal settlement privilege under FRE 501. *See* footnote to United States' Motion for Clarification. However, the United States (which had expressly agreed to the confidential nature of these settlement communications), has not

The Settling Defendants respectfully submit that where (a) CERCLA embodies a congressional goal favoring settlement of environmental litigation; (b) the EPA and the Settling Defendants expressly agreed that the settlement negotiations would be kept confidential; (c) Emhart has received copies of the Consent Decrees and over 11,200 pages of supporting material, this Court should except from disclosure under Rule 26(c) the confidential settlement communications contained in EPA's case file. Pursuant to this Court's Order, all the confidential settlement documents have been submitted to this Court for *in camera* review. Under the circumstances of this case, the limited relevance, if any, of the confidential settlement communications to the overall reasonableness of the settlement is outweighed by the interests of the Settling Defendants and the EPA in preserving the confidentiality of their settlement communications.

II. Confidential Settlement Communications Concerning Brook Village's Settlement with its Insurance Carriers

Several of the documents provided to EPA on a confidential basis reflect Brook Village's settlement negotiations with its three insurance carriers. These documents are identified on the Confidentiality Log with both the acronym "CII" standing for "Confidential Insurance Information" as well as "CSC" standing for "Confidential Settlement Communications." In addition to the reasons stated above for excepting confidential settlement communications from production, Brook Village informs the Court that the documents marked CII are restricted from disclosure to third parties by Brook Village under the confidentiality provisions of the settlement agreements ultimately reached with the carriers. On May 23, 2006, shortly after learning from EPA that these documents were in the subject EPA settlement file, counsel for Brook Village informed the carriers that documents pertaining to settlement agreement negotiations were to be provided to the Court for *in camera* review and might be produced the limited intervenor Emhart.

---

yet taken a position as to whether it would be appropriate to protect the communications from disclosure under the discretion permitted the Court pursuant to Rule 26(c).

Brook Village respectfully requests that, should this Court deny the Settling Defendants' request to except from disclosure the confidential settlement communications for the reasons stated above, that the Court provide the carriers ten days from May 23rd (that is, until Monday June 5th) before requiring EPA to produce the "CIN" documents to Emhart, so that the carriers may raise any further objections that they may have.

In summary, the Settling Defendants, joined by Rhode Island Housing, respectfully request that, pursuant to Fed. R. Civ. P. 26(c), this Court except from production to Emhart the confidential settlement communications listed on the attached Confidentiality Log and provided to the Court for *in camera* review. As discussed above, Emhart has already received the Consent Decrees and 11,200 pages of supporting materials. Under the circumstances of this case, the limited relevance, if any, of the confidential settlement communications to the overall reasonableness of the settlement is outweighed by the interests of the Settling Defendants and the EPA in preserving the confidentiality of their settlement communications. Should the Court deny this request, Brook Village respectfully requests that its insurance carriers be given until June 5th to determine if they wishes to raise any further objections to the production of the confidential insurance information to Emhart.

BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP
By its attorneys,

William S. Eggeling (RJW)

William S. Eggeling (RI Bar #4008)
ROPES & GRAY LLP
30 Kennedy Plaza
Providence, RI 02903
(401) 455-4400

CENTERVILLE MANOR ASSOCIATES LIMITED PARTNERSHIP
By its attorneys,

Richard J. Welch, Esq. (RI Bar #4497)
MOSES AFONSO JACKVONY, LTD.
170 Westminster Street, Suite 201
Providence, RI 02903
Phone: (401) 453-3600

Howard J. Castleman (RJW)
Howard J. Castleman (Pro Hac Vice)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 305-2142

Laurie Burt (RJW)
Laurie Burt, Esq. (Pro Hac Vice)
Seth D. Jaffe, Esq. (Pro Hac Vice)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Joined by RHODE ISLAND HOUSING AND MORTGAGE FINANCE CORP.

Michael V. Milito (RJW)
Michael V. Milito (RI Bar #2806)
44 Washington Street
Providence, RI 02903
(401) 457-1173

**CERTIFICATE OF SERVICE**

I, Richard Welch, hereby certify that copies of the within Memorandum Concerning Confidentiality of Settlement Communications was served on May 24, 2006, by first-class mail, postage prepaid, and by electronic mail, as follows:

Jerome W. MacLaughlin
Trial Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
jerry.maclaughlin@usdoj.gov

Eve Vaudo
Enforcement Counsel
U.S. Environmental Protection Agency
New England Region
One Congress St., Suite 1100
Boston, MA 02114-2023
vaudo.eve@epamail.epa.gov

Laurie Burt
Foley Hoag LLP
Seaport World Trade center
155 Seaport Blvd.
Boston, MA 02210-2600
lburt@foleyhoag.com

William S. Eggeling
Ropes & Gray LLP
30 Kennedy Plaza
Providence, RI 02903
william.eggeling@ropesgray.com

Howard J. Castleman
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
howard.castleman@hklaw.com

Michael Milito
Rhode Island Housing and Mortgage Finance Corp.
44 Washington Street
Providence, RI 02903
mmilito@rihousing.com

Brian Wagner
Rhode Island Department of
Environmental Management
235 Promenade Street
Providence, RI 02908-5767
brian.Wagner@dem.ri.gov

Terrence Tierney
Assistant Attorney General
R.I. Department of the Attorney General
150 North Main Street
Providence, RI 02903
Ttierney@riag.ri.gov

Jerome C. Muys, Jr.
Swidler Berlin
The Washington Harbour
3000 K Street, N.W., Suite 300
Washington, D.C. 20007-5116
jcmuys@swidlaw.com

Craig Scott
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
cscott@duffysweeney.com

James P. Ray
Robinson & Cole LLP'
280 Trumbull Street
Hartford, CT 06103-3597
jray@rc.com

# 3799979_v3