UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP**<br><br>**&**<br><br>**CENTERDALE MANOR ASSOCIATES LIMITED PARTNERSHIP,**<br><br>**Defendants.** | ) | **Civil Action No. 05-195S** |

**RESPONSE OF INTERVENOR EMHART INDUSTRIES, INC. TO SETTLING DEFENDANTS' MEMORANDUM CONCERNING CONFIDENTIALITY OF SETTLEMENT COMMUNICATIONS**

Intervenor Emhart Industries, Inc. ("Emhart"), through its attorneys, respectfully submits this response to Defendants Brook Village Associates Limited Partnership and Centerdale Manor Limited Partnerships' (collectively, "Settling Defendants") memorandum concerning confidentiality of settlement communications.

**PRIOR PROCEEDINGS IN THIS ACTION**

On February 22, 2006, Emhart filed a Motion to Intervene, along with a supporting memorandum of points and authorities, seeking leave to participate in the Court's consideration of the Government's Motion to Enter Consent Decrees and to provide to the Court in the course thereof Emhart's analysis of the proposed settlements encompassed in the proposed Consent Decrees. Following a hearing on April 3, 2006, the Court granted Emhart's Motion to Intervene and, on May 4, 2006 issued an order concerning the scope of Emhart's intervention and the range

of materials which Plaintiffs and Defendants should provide with respect to Emhart's and the Court's analysis of the proposed Consent Decrees. On May 17, 2006, the Court issued a second order clarifying the scope of the document production. The Court ordered, *inter alia*, that the Government should "submit to the Court an inventory of the settlement file for the Court's review. If after review the Court believes disclosure of the further documents is required, the Court shall so order."

On May 24, 2006, the Government produced certain documents to Emhart and provided the Court with an inventory of its settlement file. On the same day, the Settling Defendants filed a memorandum concerning confidentiality of settlement communications in which they seek to preclude the production of the settlement documents. As set forth below, the settlement communications should be produced because those documents are not only relevant but critical to Emhart's analysis of the proposed Consent Decrees.

## DISCUSSION

### 1. Legal Standard

Rule 26 of the Federal Rules of Civil Procedure provides that a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party [or that is] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26 (b)(1).

The Settling Defendants cite to the Sixth Circuit's decision in Goodyear Tire & Rubber Company v. Chiles Power Supply, Inc., 332 F.3d 976, 981-83 (6th Cir. 2003), in which that court recognized a federal settlement privilege. However, this Court has not adopted that privilege. Bennett v. La Pere, 112 F.R.D. 136, 140 (D.R.I. 1986) (requiring production of settlement

documents because they were "relevant and not privileged.").[1] The vast majority of courts have also declined to adopt the settlement privilege. *See e.g.*, In re Subpoena Issued to Commodities Futures Trading Commission, 370 F.Supp.2d 201, (D.D.C. 2005) (rejecting the Sixth Circuit's analysis and noting that "a substantial number of cases have rejected such a privilege"), citing In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1124 (7th Cir.1979) (finding "no convincing basis" for proposition that "the conduct of the settlement negotiations is protected from examination by some form of privilege"); Primetime 24 Joint Venture v. Echostar Communications Corp., 2000 WL 97680, at *4 n. 5 (S.D.N.Y.) ("[W]e agree with defendants' observation that Fed.R.Evid. 408 does not create a settlement privilege."); Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland, 122 F.R.D. 447, 449 (S.D.N.Y.1988) (Rule 408 "only applies to the admissibility of evidence at trial and does not necessarily protect such evidence from discovery"); Bennett v. La Pere, 112 F.R.D. 136, 138-39 (D.R.I.1986) (rejecting contention that some "particularized showing" of need is necessary to obtain settlement documents in discovery).[2]

In rejecting the asserted settlement privilege, this Court held that, where settlement information is sought in discovery, the party requesting the discovery need only show its relevance and "the party opposing discovery should have the burden of establishing good cause or sound reason for blocking disclosure." Bennett, 112 F.R.D. at 140.[3] "If there is some

---

[1] The issue has not been addressed by the Court of Appeals for this Circuit.

[2] The Settling Defendants suggest that the Court need not adopt this privilege wholesale, but, instead, may issue a protective order under Rule 26(c) preventing the disclosure of the information. That rule provides that a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…." Fed. R. Civ. P. 26(c). As set forth below, Settling Defendants cannot make this showing.

[3] The Settling Defendants contend that Bennett is not on point because it involved only the production of a settlement agreement, not documents exchanged in the course of negotiating

legitimate relevance to the requested information and if no cognizable privilege attaches, it ought to be discoverable – at least in the absence of some countervailing consideration, e.g., that production would be disproportionately onerous or burdensome, that unfair prejudice would result, or the like." *Id.* at 138.

**2. The Documents are Critical to Emhart's Analysis of the Proposed Consent Decrees**

Here, the documents are not simply relevant but essential for a thorough analysis of the proposed Consent Decrees under the four-factor standard adopted by the United States Court of Appeals for the First Circuit, one of which is whether the process for reaching the settlement was procedurally fair. United States v. Davis, 11 F. Supp. 2d 183, 189 (D.R.I. 1998), citing United States v. Cannons Eng'g Corp., 899 F.2d 79, 89-90 (1st Cir. 1990).[4] When assessing procedural fairness, "the Court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance. *Id.* at 189. Consistent with the foregoing, the Government agrees that "[f]actors considered by courts reviewing CERCLA consent decrees for fairness include 'the strength of the plaintiffs' case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation if the settlement is not

---

the agreement. However, it appears that Settling Defendants are incorrect on this point – Judge Selya refers not simply to a settlement agreement but to "the entire package of settlement documents" and the "settlement materials." *Id.* at 137, 139. Moreover, the Settling Defendants never explain why a confidential settlement agreement should be treated differently from confidential settlement communications; indeed, the relevant Rule of Evidence, entitled "Compromise and Offers to Compromise," clearly applies to both. Fed. R. Evid. 408.

[4] And, contrary to the constricted role of the Court espoused by the Settling Defendants, "the approval process is more than a mere formality. The Court does not serve simply as a rubber stamp that automatically places its imprimatur on the proposed settlement. Rather, the Court must make an independent judgment as to whether the proposed settlement is fair and reasonable." *Id.*

approved.'" United States' Memorandum in Support of Its Motion to Enter Consent Decree, at 14-15 (citations omitted).

The documents that have been withheld go to the very heart of this matter. For example, item 14 in EPA's inventory consists of "Letters received from, and responses provided to, elected officials inquiring into the status of discussions between EPA and the Settling Defendants." This category is consistent, unfortunately, with previous apparent efforts by the Defendants to bring political influence to bear on EPA with respect to its enforcement actions against the two partnerships. The Court, it is respectfully submitted, should order EPA and the Settling Defendants to produce to Emhart for its review all such communications encompassed in item 14, as well as all other documentation pertaining to such communications, for such communications and related documentation go to the heart of the fairness of these proposed Consent Decrees.

Similarly, the last entry in the partnerships' "Confidentiality Log" reports a "Letter . . . regarding . . . contribution protection issues." This and possibly other documents which the Government and the Settling Defendants seek to withhold very likely address the still unanswered question of why, under the proposed Consent Decrees, contribution protection would be extended to the limited partners in contravention of EPA's ATP Guidance and why (the flip side of the same coin) the "[o]wners' equity [has not been] analyzed as a potential source of ATP settlement funds." ATP Guidance, at 4, 24. If such documents are present in the withheld production, they most likely indicate why those decisions were made; the absence of any such documents would strongly suggest that EPA failed even to consider a crucial financial issue which it is required by its own Guidance to pursue. Given the foregoing, it seems clear that

the documents are not only relevant to but a requisite part of the inquiry into the reasonableness and fairness of the proposed Consent Decrees.[5]

**3. The Settling Defendants Have Failed to Establish Good Cause for Withholding the Documents**

The Settling Defendants also have not met their burden of demonstrating why the documents should otherwise be withheld. They cannot assert that the production will be burdensome: The documents have already been organized and provided to the Court and thus any burden resulting from their production to Emhart would be minimal. Their claim that they will be prejudiced by the production because Emhart will use those documents in the litigation is true in every case where a party seeks documents; the fundamental purpose of discovery is to make available the materials which will be used during the course of the litigation.[6] The only true prejudice here is that identified by Judge Selya in Bennett: "[T]he only 'prejudice' which disclosure will work vis-à-vis the plaintiffs is to rob them of the (unfair) tactical advantage which would attach to keeping [the other side] uninformed. 'Good cause' in the current context requires more than oneupsmanship gone awry." Bennett, 112 F.R.D. at 140.

The Settling Defendants also claim that the settlement process under CERCLA "has a private side and a public side" and that if production is required, it would undermine the parties'

---

[5] As reflected in the discussion in the following section, other financial analysis issues which Emhart identified at the beginning of this proceeding and which are the subject matter of the bulk of the documents listed in the Defendants' "Confidentiality Log" include the question of why the interest rate of the proposed re-financings is so high, the adequacy and the interpretation of the financial statements submitted by the Defendants, and the extent of and limitations on the review by EPA's financial consultant. *See infra,* at 8-9.

[6] To the extent the Settling Defendants are concerned that Emhart will use the documents outside the course of this litigation, Emhart has entered into a Protective Order that precludes the disclosure of confidential materials produced in this case. Moreover, any of the settlement documents that are subject to the attorney-client or work product privilege may, of course, be withheld.

expectations of confidentiality and have a chilling effect on settlement efforts in CERCLA cases. This is a false dichotomy. A critical part of the analysis of the proposed Consent Decrees involves considering whether the process for reaching the proposed settlement was procedurally fair, including a review of the negotiations between the parties.[7] For the same reason, the Settling Defendants cannot claim an expectation of privacy when those negotiations are to be analyzed in the normal course of considering the reasonableness of the Consent Decrees. Nor would requiring the production of settlement communications chill honest settlement efforts in CERCLA cases. "To suggest... that the prospect of revealing settlement terms to a narrowly limited audience (nonsettling codefendants and those in privity with them) might impede out of court dispositions seems wrongheaded, given that the alternative to settlement would be a double whammy: the loss of the benefit of the bargain and the more public airing occasioned by a fullblown trial." Bennett, 112 F.R.D. at 140. Rather than chill future settlement efforts, requiring the production of the settlement documents would promote an open process whereby the Court and intervenors like Emhart can fully assess the nature of the negotiations to determine whether the end results – the proposed Consent Decrees – were achieved through a fair and arm's length process.[8]

[7] The Settling Defendants' assertion that the settlement process should be considered "private" rings a bit hollow when they are seeking judicial approval of the settlement, when the settlement is with a public entity, and when the settlement would resolve the liability of the Settling Defendants to third parties, like Emhart. Perhaps this is why, as the Settling Defendants concede in their memorandum, the Government does not support a blanket federal settlement privilege and has not taken a position as to whether relevant non-privileged documents in the Defendants' possession should be produced.

[8] Communications concerning Brook Village's settlement with its insurance carriers have also been withheld. Given that the amount of the insurance recoveries was included in the Government's expert's ability to pay analysis, Emhart and the Court are entitled to these documents which are relevant to the inquiry into the underlying veracity of the insurance claim and its subsequent settlement. *See* Appendix D: Brook Village's Financial Statements,

Finally, many of the documents listed on the Settling Defendants' so-called "Confidentiality Log" involve none of the spectres which the Settling Defendants have conjured up. Instead, many of the withheld documents pertain to crucial financial analysis issues which Emhart has identified from the very beginning of this proceeding, such as the following:

- "Real Estate Appraisal" (Item 1);
- "Letter… regarding RI Housing financing" or "settlement refinancing by RIHMFC," prevailing interest rates, etc. (Items 2, 10, 11, 43, 44, 49. 50, 55, 56, 78, 79, 81, 82, 83, 84, 86, 87, 88, 89, 91, 92);
- "Letter …regarding financial statements" or "financial information" (Items 4, 5, 6, 8, 9, 20, 21,31);
- "E-mail … regarding loan calculations" (Items 7, 93) or "loan discussion" (Item 13);
- "Letter …regarding loan use" (Item 29);
- "Letter … regarding EPA questions on CMALP financials …." , "CMALP Financial Statements. . . .", etc. (Items 38, 39, 61, 62, 63, 64, 65);
- "Letter … regarding questions from Industrial Economics [EPA's financial consultant]" "Industrial Economics review," etc. (Items 45, 46, 47, 48, 72, 73, 74, 75, 76);
- "Letter … regarding refinancing/settlement issues" (Items 52, 53);
- "E-mail …regarding settlement amount" or "settlement sum" (Items 57, 58, 85);
- "E-mail … regarding CMALP defense costs" (Item 67);
- "Letter … regarding … contribution protection issues" (Item 94).

The foregoing is just a sampling, but as the Court can see, none of these examples appear to involve, for example, "the strength and weaknesses of the Settling Defendants' purported liability and defenses under CERCLA and of potential claims against non-settlors, such as

---

attached to Appendix 2 of the U.S. Environmental Protection Agency's Response to Comments on Proposed Consent Decrees, February 2006.

Emhart," Defendants' Memorandum at 4, about which the Settling Defendants purport to have such grave concerns. Indeed, there are almost no entries in the "Confidentiality Log" which actually pertain to the kinds of concerns which the Settling Defendants purport to have. The attempt by the Settling Defendants to create a misleading smoke screen which has no actual substance and which seems intended only to shield highly relevant information from Emhart's and the Court's review should not be countenanced.

## CONCLUSION

For the reasons stated above, and for such other reasons as may appear to the Court, Emhart respectfully requests that the Court require the Settling Defendants to produce the materials listed on their "Confidentiality Log" forthwith.

Respectfully submitted,

EMHART INDUSTRIES, INC.

By Its Attorneys,

Craig M. Scott, Esq. (#4237)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Warren Anthony Fitch, Esq. (admitted *pro hac vice)*
L. Misha Preheim, Esq. (admitted *pro hac vice)*
BINGHAM McCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
(202) 373-6000, -6695
(202) 373-6001 (Facsimile)

Dated: May 31, 2006

**CERTIFICATE OF SERVICE**

I certify that on the 31st day of May, 2006, I caused a true copy of this Response to be forwarded to the following by electronic mail and first class mail, postage prepaid:

Jerome MacLaughlin, Esq.
Senior Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Henry.Friedman@usdoj.gov

Eve Vaudo, Esq.
Enforcement Counsel
U.S. Environmental Protection Agency
New England Region
One Congress Street
Suite 1100 (SES)
Boston, MA 02114-2023
vaudo.eve@epamail.epa.gov

Laurie Burt, Esq.
Foley Hoag
Seaport World Trade Center
155 Seaport Blvd.
Boston, MA 02210-2600
lburt@foleyhoag.com

Richard J. Welch
Moses & Afonso
170 Westminster Street, Suite 201
Providence, RI 02903
rwelch@mosesafonso.com

William S. Eggeling
Ropes & Gray LLP
30 Kennedy Plaza
Providence, RI 02903
William.Eggeling@ropesgray.com

Howard J. Castleman, Esq.
Holland & Knight
10 St. James Avenue, 12th Floor
Boston, MA 02116
howard.castleman@hklaw.com

Michael Milito, Esq.
Rhode Island Housing and Mortgage Finance Corporation
44 Washington Street
Providence, RI 02903
mmilito@rihousing.com

Brian Wagner, Esq.
Rhode Island Department of Environmental Management
235 Promenade Street
Providence, RI 02908-5767
brian.wagner@dem.ri.gov

Terrence Tierney
Assistant Attorney General
RI Department of the Attorney General
150 North Main Street
Providence, RI 02903
Ttierney@riag.ri.gov

James P. Ray
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
jray@rc.com



9293416v1