UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP, ET AL.,<br>Defendants. | CIVIL ACTION No. 05-195S |

**MEMORANDUM OF LAW OF CENTERDALE MANOR ASSOCIATES LIMITED PARTNERSHIP IN OPPOSITION TO THE RECUSAL OF JUDGE SMITH**

**INTRODUCTION**

Centerdale Manor Associates Limited Partnership ("Centerdale Manor") respectfully submits this memorandum of law to support its position that it is neither necessary nor appropriate for Judge Smith to recuse himself from hearing this matter. This memorandum supplements and is based on the facts described in the Information Statement of Centerdale Manor Limited Partnership ("Information Statement") filed on July 19, 2006, concerning the nature of John L. Marshall's III ("Mr. Marshall") interest in Centerdale Manor and therefore his interest in the proposed consent decrees. In short, recusal is not warranted for two reasons. First, the nature of the relationship between Mr. Marshall and Judge Smith would not lead an objective person to question Judge Smith's impartiality. Second, even if any such concerns were present, Mr. Marshall's financial interest in the entry of the consent decree that is at the heart of this case is too attenuated to necessitate recusal. Because recusal would impose substantial hardship on the parties as a result of the inevitable delay recusal would cause, Centerdale Manor

asks that Judge Smith continue to hear the case and promptly reschedule a hearing on the merits of entry of the Consent Decrees.

## ARGUMENT

I. The Legal Standard Governing Recusal

The legal standard applied to federal judges regarding disqualification is that "[a]ny justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (2006). The application of this provision is an objective one, and requires a showing of a reasonable appearance of bias. Blue Cross & Blue Shield of R.I. v. Delta Dental of R.I., 248 F. Supp. 2d 39, 42 (D.R.I. 2003); Obert v. Republic Western Ins. Co., 190 F. Supp. 2d 279, 284 (D.R.I. 2002), aff'd, 398 F.3d 138 (1st Cir. 2005). The standard is usually applied to a party moving for recusal, where that party has the burden of showing a reasonable appearance of bias. Id.

Despite the potentially broad reach of § 455(a), "[r]ecusal is a serious decision for a judge, not to be entered into lightly. . . . If recusal were granted too readily and the case bounced from one judge to another, then judicial administration and economy would suffer." Obert 190 F. Supp. 2d at 285 (D.R.I. 2002), citing U.S. v. Snyder, 235 F.3d 42, 45-46 (1st Cir. 2000)." Furthermore, "[w]e are reminded that a judge has as great an obligation not to disqualify himself when there is no occasion to do so as he has to do so when the occasion does arise." State v. Clark, 423 A.2d 1151, 1158 (R.I. 1980), citing Amidon v. State, 604 P.2d 575, 577 (Alaska 1979).

The Supreme Court has addressed the application of Section 455(a) in Litekey v. U.S., 510 U.S. 540 (U.S. Ga. 1994). In Liteky, the Court held that the pejorative connotation of the term 'partiality' in Section 455(a) suggests that recusal is only appropriate where the alleged bias, prejudice, or appearance of partiality "is, for some reason, wrongful or inappropriate." Id.

at 550 (emphasis in original). Therefore, recusal is only warranted if the evidence "reveal[s] such a high degree of favoritism or antagonism as to make fair judgment impossible." Id. at 555.

Although it is hypothetically possible for recusal to be warranted based on the judge's personal relationship with an interested party, the Code of Judicial Conduct and the relevant provisions of Section 455 make clear that such partiality is uniformly applicable only to persons with familial relationships to a judge. See 28 U.S.C. § 455(b)(4-5) (2006) (specifically requiring that a judge be disqualified in cases involving a spouse, child, or person within the third degree of relationship of consanguinity or affinity).

Indeed, while there has been some question as to the need for recusal based on non-familial relationships, it is clear that casual relationships and professional interactions are not sufficient to warrant recusal. Instead, a more intimate relationship between a judge and a party must be present before recusal might be considered appropriate.

> Generally, the more intimate the relationship between the judge and a person who is interested in the proceeding pending before him, the more acute the concern that the judge may be tempted to depart from the expected judicial detachment or to reasonably appear to have done so. While many types of judicial relationships, including social, professional, and business relationships, could potentially cause a judge to become biased, familial relationships are the ones that are typically thought to pose the greatest risk."

Richard E. Flamm, Judicial Qualification: Recusal and Disqualification of Judges, § 8.2 (1996).

Review of whether recusal is warranted based on a relationship between the judge and a party proceeds in two steps. First, the court must determine whether "the judge's relationship with the interested party is sufficiently close to warrant an inference that the judge's impartiality is likely to be compromised." If the answer is no, then recusal would not be appropriate. Even if the answer to this first question is yes, recusal is still appropriate only if the court also determines that the person with whom the judge has the relationship has a sufficiently substantial interest in the case that a judge's ruling might significantly benefit that person. Id.

Generally, purely social relationships between Judges and parties involved in a case have not mandated recusal. After diligent inquiry, Centerdale Manor has identified only one case in which a judge was recused based on a non-familial relationship with a person affiliated with a party -- and in that case, the judge and the person at issue were extremely close personal friends and the person at issue was a key fact witness.[1] Hadler v. Union Bank and Trust Co. of Greenburg, 765 F. Supp. 976, 977-78 (S.D. Ind. 1991) ("Friendship means many things, but it is rarely adequate grounds upon which to seek recusal of a federal judge"). The reason for this is a practical one -- a more stringent standard would preclude many judges from engaging socially in their communities. This is especially true in smaller jurisdictions, where the requirement of recusal for all acquaintances would *de facto* require that judges not engage in their communities at all. Indeed, "an American judge, moreover, is not, upon elevation to the bench, expected to withdraw from society and live an ascetic and socially sterile life." Richard E. Flamm, Judicial Disqualification, at § 8.11.

In In re United States, the First Circuit held that the District Court Judge properly ruled against a motion for recusal even though he was close friends with former Massachusetts Governor John Volpe, who had been significantly supported by the defendant State Senator James Kelly. The Court held that to find that the judge should have disqualified himself "would go far to establish the precedent that any suspicion of partiality, though tenuous and remote in origin, would suffice to compel disqualification." In re United States, 666 F.2d. 690 (1st Cir. 1981). Furthermore, "[n]ot only would the role of judges be severely constricted by requiring disqualification under these circumstances but the result would reflect a more jaundiced view as to when there should be a reasonable doubt about a judge's impartiality than accords with public

[1] It should be emphasized that the court in Hadler was confronted with a question of potential bias relative to a crucial witness, which would have required the judge to assess his own friend's credibility. Contrasting those facts with those in this case, Mr. Marshall's relationship with Judge Smith is less intimate and his role in this case is more attenuated than the friend at issue in Hadler. Here Mr. Marshall not a party or a witness, but rather a person with a fractional interest (along with many other people and entities) in Centerdale Manor.

perception." Id. See also In re: Allied Signal, Inc., 891 F.2d. 967, 971 (1st Cir. 1989); Wessmann by Wessmann v. Boston Sch. Comm., 979 F. Supp. 915, 918 (D. Mass. 1997) (to require recusal based solely on a judge's membership in an organization related to the issue at bar would be "to embrace a myopic vision of the judge's role, a vision that required judges to refrain from participating in their churches, in their non-political community affairs, in their universities." quoting Pennsylvania v. Local 542, Int'l Union of Operating Engineers, 338 F.Supp. 155, 181 (E.D. Pa. 1974).

This view of disqualification principles has been embraced in Rhode Island courts as well. In State v. Clark, 423 A.2d 1151 (R.I. 1980), the court held that recusal was unnecessary in a criminal appeal where the record indicated that the judge and the prosecutor were acquaintances and the prosecutor had rented office space from the trial justice's law firm. "Mere acquaintanceship between members of the bench and bar, particularly in a state the size of Rhode Island, is not a ground for recusal. If it were, the state's judicial system might well grind to a halt." Id. at 1158. See also Donato v. R.I. Hosp. Trust Nat. Bank, 52 F. Supp. 2d 317, 320 (D.R.I. 1999); State v. Cruz, 517 A.2d 237, 240-41 (R.I. 1986); State v. Romano, 456 A.2d 746, 752-53 (R.I. 1983).

## II. The Relationship Between Mr. Marshall and Judge Smith is not Sufficiently Close to Justify Concerns that Might Warrant Recusal

Applying these principles to the facts here, the nature of the relationship between Judge Smith and Mr. Marshall does not rise to the level of intimacy that would require or even suggest a need for recusal. While Judge Smith and Mr. Marshall know each other, that relationship is based on their acquaintance as fellow members of the Board of Governors of the University Club (in Providence), and does not rise to the level of interest and influence contemplated by Section 455 or relevant case law.

Furthermore, to avoid any possible appearance of impropriety, Mr. Marshall has volunteered to the President of the Club's Board to resign from the proposed committee which the Judge apparently had been asked by the President to chair and which the President had asked Mr. Marshall to assist. See Information Statement, at 4-5. Centerdale Manor has since learned that Judge Smith's term as a member of the Club's Board has expired, and that Judge Smith will not be serving on the planning committee which was to have resulted in potentially more frequent contacts between the Judge and Mr. Marshall. Id.

In conclusion, no objective observer could conclude that the relationship between Judge Smith and Mr. Marshall would result in bias on Judge Smith's part. "Friendship means many things, but it is rarely adequate grounds upon which to seek recusal of a federal judge." Hadler, 765 F. Supp. at 977.

III. Mr. Marshall's Financial Interest in the Decrees is Insufficient to Warrant Recusal

While the nature of the relationship between Judge Smith and Mr. Marshall is such that recusal is most certainly not warranted, it is also true that Mr. Marshall's ownership interest in the Settling Defendant Centerdale Manor Associates is fractional, and his authority with respect to the partnership is attenuated at best. As was detailed in the Information Statement submitted to the court on July 19, Mr. Marshall's ownership interest in Centerdale Manor is minimal, totaling only 0.6899 per cent of the total ownership interest. Moreover, Mr. Marshall has no role in the day-to-day operation of Centerdale Manor and almost no ability or authority to control its management. It is true that Mr. Marshall was once a general partner of Centerdale Manor, and under the Consent Decrees, each settling partnership and its current and former general and limited partners, and their officers, directors, heirs, successors or assigns will receive a covenant not to sue from the United States and the State. However, as counsel for the United States pointed out at the July 17 hearing, the release provided in the Decrees to the Settling Defendants

is generic and routine for settlements of this type with partnership entities. Mr. Marshall stands to receive the same release that every other person or entity that constitutes Centerdale Manor would receive.

**CONCLUSION**

On these facts, no objective person could conclude that Judge Smith might somehow be so influenced by his relationship with Mr. Marshall that he could not exercise his judicial duties free of improper bias. For all of the above-stated reasons, and based on the facts provided in the Information Statement, Judge Smith should not be recused from hearing this case.

CENTERVILLE MANOR ASSOCIATES
LIMITED PARTNERSHIP

By its attorneys,

Richard J. Welch, Esq. (RI Bar #4497)
MOSES AFONSO JACKVONY, LTD.
170 Westminster Street, Suite 201
Providence, RI 02903
Phone: (401) 453-3600
Fax: (401) 453-3604

Laurie Burt (RJW)

Laurie Burt, Esq. (Pro Hac Vice)
Seth D. Jaffe, Esq. (Pro Hac Vice)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Phone: (617) 832-1000
Fax: (617) 832-7000

Dated: July 21, 2006

**CERTIFICATE OF SERVICE**

I, Richard J. Lack, hereby certify that copies of the Memorandum of Law of Centerdale Manor Associates Limited Partnership in Opposition to the Recusal of Judge Smith was served on July 21, 2006, by first-class mail, postage prepaid, and by electronic mail, as follows:

Jerome W. MacLaughlin
Trial Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
jerry.maclaughlin@usdoj.gov

Eve Vaudo
Enforcement Counsel
U.S. Environmental Protection Agency
New England Region
One Congress St., Suite 1100
Boston, MA 02114-2023
vaudo.eve@epamail.epa.gov

William S. Eggeling
Ropes & Gray LLP
30 Kennedy Plaza
Providence, RI 02903
william.eggeling@ropesgray.com

Howard J. Castleman
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
howard.castleman@hklaw.com

Michael Milito
Rhode Island Housing and Mortgage Finance Corp.
44 Washington Street
Providence, RI 02903
mmilito@rihousing.com

Brian Wagner
Rhode Island Department of
Environmental Management
235 Promenade Street
Providence, RI 02908-5767
brian.Wagner@dem.ri.gov

Terrence Tierney
Assistant Attorney General
R.I. Department of the Attorney General
150 North Main Street
Providence, RI 02903
Ttierney@riag.ri.gov

Jerome C. Muys, Jr.
Swidler Berlin
The Washington Harbour
3000 K Street, N.W., Suite 300
Washington, D.C. 20007-5116
jcmuys@swidlaw.com

Craig Scott
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
cscott@duffysweeney.com

James P. Ray
Robinson & Cole LLP'
280 Trumbull Street
Hartford, CT 06103-3597
jray@rc.com

Richard J. Welch