FILED

MAY 0 6 2005

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CA 05 195 S

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF RHODE ISLAND, | ) | |
| Plaintiffs, | ) | Civil Action No. ____________ |
| v. | ) | Judge ____________________ |
| BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP, | ) | |
| Defendant. | ) | |

**CONSENT DECREE**

**I. BACKGROUND**

A. The United States of America ("United States"), on behalf of the National Oceanic and Atmospheric Administration ("NOAA") of the United States Department of Commerce and the United States Department of the Interior ("DOI"), as the designated federal trustees for natural resources, and the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint against Brook Village Associates Limited Partnership ("Settling Defendant") in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9606 and 9607, as amended ("CERCLA"), seeking injunctive relief, reimbursement of response costs incurred or to be incurred for response actions taken or to be taken at or in connection with the release or threatened release of hazardous substances at the Centredale Manor Restoration Project Superfund Site in North Providence, Rhode Island ("the Site") and compensation for Natural Resource Damages associated with the natural resources allegedly injured by the release of hazardous substances at the Site.

B. The State of Rhode Island (the "State") also filed a complaint against the Settling Defendant in this matter alleging that the Settling Defendant is liable to the State pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, and various State statutory and common law theories with respect to the Site. The State in its complaint seeks reimbursement of response and other costs incurred or to be incurred for response actions and other measures taken or to be taken at or in connection with the release or threatened release of hazardous substances at the Site.

C. Settling Defendant is the current owner of a Section 8 affordable housing apartment building for the elderly located at 2072 Smith Street in North Providence, Rhode Island, a parcel of approximately 3.5 acres (the "Property"). Settling Defendant has provided affordable housing for more than 100 elderly residents for over twenty five years. The Property is located along the Woonasquatucket River at the northern portion of the Site. Settling Defendant purchased the Property in 1976 and completed construction of the apartment building in late 1977. Settling Defendant does not admit any liability to Plaintiffs arising out of the releases, transactions or occurrences alleged in the complaint.

D. The Rhode Island Housing and Mortgage Finance Corporation ("Rhode Island Housing") is a public corporation of the State, established by statute Chapter 55, Title 42 of the Rhode Island General Laws, which finances and regulates affordable housing developments in the State. From 1976 to 2002, Rhode Island Housing held the mortgage on Settling Defendant's Property and regulated rents, financial reserves, return on equity, capital expenditures, and other aspects of Settling Defendant's affordable housing project on the Property. Since the mortgage was paid in full in 2002, Rhode Island Housing has continued to regulate the Settling Defendant's affordable housing project on the Property under annual renewal agreements with the Settling Defendant, the last of which is scheduled to expire in May 2005.

E. On September 15, 1999, EPA mailed a Notice of Potential Liability to Settling Defendant, stating that Settling Defendant was liable for the United States' response costs at the Site and inviting Settling Defendant to perform response actions at the Site. EPA sent similar Notices of Potential Liability to other Potentially Responsible Parties ("PRPs") in September 1999, May 2003 and May 2004. Settling Defendant has participated, together with certain other PRPs, in the performance of three removal actions to address conditions at the Site, pursuant to a Unilateral Administrative Order for Removal Action (CERCLA-1-2000-0026, April 12, 2000), a Second Administrative Order for Removal Action (CERCLA-1-2001-0032, March 26, 2001), and a Third Administrative Order on Consent for Removal Action (CERCLA-1-2003-0073, September 16, 2003) (these three orders are collectively referred to as "the Removal Orders"). The removal actions included capping of contaminated soils and sediments on and near the Property, restoration of the Allendale Dam, and sampling and excavation of soils on residential properties along the eastern bank of Allendale Pond.

F. Settling Defendant has asserted that it has one or more valid defenses to liability for past and future damages and response costs at the Site. Without waiving such defenses, Settling Defendant has spent more than one million dollars on contractor, consultant and attorneys fees for response and other activities related to the Removal Orders and/or the Site. According to Settling Defendant and Rhode Island Housing, these expenditures have caused a serious depletion of the Settling Defendant's available reserve accounts, intended to ensure the continued maintenance and operation of affordable housing at the Property.

G. The United States has reviewed financial and other information provided by Settling Defendant, as well as information governing Settling Defendant's ownership, operation and financing of the Property as regulated affordable housing, including limitations on Settling Defendant's ability to access equity from the Property and substantial affirmative regulatory requirements regarding maintenance of adequate reserves to ensure continued operation of affordable housing at the Property. Based upon this information and analysis, the United States

has determined that Settling Defendant has limited financial ability to pay for Natural Resource Damages at or response costs incurred or to be incurred at the Site and/or for Natural Resource Damages and Costs of Assessment, while maintaining the affordable housing on the Property. The United States further has determined that requiring Settling Defendant to pay significantly more than the amount specified in Section VI in connection with the Site, while still operating and maintaining the Section 8 housing on the Property, would impose an extreme burden on the Settling Defendant and would jeopardize continued operation of the affordable housing complex at the Property. Equitable and public interest considerations associated with resolving federal and state environmental liability for the owner of this Section 8 apartment building for the elderly, including the urgent need to preserve and maintain affordable housing in the State, support the settlement contained in this Consent Decree.

H. So that it may fund its obligations under this Consent Decree, while maintaining affordable housing on the Property, Settling Defendant has committed to enter into a new long term mortgage transaction with Rhode Island Housing pursuant to the State's Preservation Refinancing program, whereby Settling Defendant will commit to continue to use the Property as affordable housing for the elderly for forty (40) more years. The settlement payments to be made by Settling Defendant pursuant to Section VI represent the maximum equity that can be realized as a result of this new mortgage, consistent with federal and state requirements. Rhode Island Housing has agreed to provide such new mortgage financing to Settling Defendant, after the Effective Date of this Consent Decree and subject to certain standard real estate conditions, in exchange for the covenant not to sue and contribution protection provided in Sections VIII and XI.

I. The United States, the State of Rhode Island, and Settling Defendant agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and is entered into without the admission or adjudication of any issues of fact or law, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, consistent with the goals of CERCLA, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II. JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9606, 9607 and 9613(b) and also has personal jurisdiction over Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant consents to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2. This Consent Decree is binding upon the United States, the State of Rhode Island, and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendant under this Consent Decree.

## IV. DEFINITIONS

3. Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

a. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq.*

b. "Consent Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

c. "Costs of Assessment" shall mean all costs including, but not limited to, direct, indirect, and administrative costs incurred or to be incurred by the Trustees in assessing the alleged injury, destruction, or loss of natural resources at or in connection with the Site and directly and indirectly related to negotiating this Consent Decree through the date of lodging of this Consent Decree, plus Interest on all such costs which has accrued through such date, and all costs of approving this Consent Decree.

d. "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

e. "DOI" shall mean the United States Department of the Interior and any successor departments, agencies or instrumentalities of DOI.

f. "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

g. "Effective Date of this Consent Decree" shall mean the date on which this Consent Decree is entered as a final judgment by the United States District Court for the District of Rhode Island and either all appeal periods have lapsed or the Court's entry of the Consent Decree has been affirmed by the United States Court of Appeals for the First Circuit or, as applicable, the United States Supreme Court.

h. "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

i. "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

j. "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

k. "Natural Resource Damages" shall mean damages recoverable pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, for injury to, destruction of, or loss of natural resources at the Site including, but not limited to, Costs of Assessment and costs of restoring, replacing or acquiring the equivalent of injured or lost natural resources.

l. "NOAA" shall mean the National Oceanic and Atmospheric Administration of the United States Department of Commerce, and any successor departments, agencies or instrumentalities of the United States.

m. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

n. "Parties" shall mean the United States, the State of Rhode Island, and the Settling Defendant.

o. "Plaintiffs" shall mean the United States and the State of Rhode Island.

p. "Preservation Refinancing" shall mean the program administered by Rhode Island Housing pursuant to which Rhode Island Housing will enter into a refinancing arrangement with a Section 8 subsidized apartment building in exchange for the owner's agreement to extend the affordability restrictions beyond the original term.

q. "Prevailing Interest Rate" shall mean the sum of (a) the most recent weekly average yield on the twenty year treasury constant maturity bond, as published in the Federal Reserve Statistical Release H.15-Selected Interest Rates, from the date of the closing of the Preservation Refinancing mortgage transaction, and (b) 365 basis points.

r. "Property" shall mean the parcel of land owned by Settling Defendant at 2072 Smith Street in North Providence, Rhode Island, and the improvements thereon, including an affordable housing apartment building.

s. "RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. § 6901, *et seq.* (also known as the Resource Conservation and Recovery Act).

t. "Removal Orders" shall mean the Unilateral Administrative Order for Removal Action (CERCLA-1-2000-0026, April 12, 2000), the Second Administrative Order for Removal Action (CERCLA-1-2001-0032, March 26, 2001), and the Third Administrative Order on Consent for Removal Action (CERCLA-1-2003-0073, September 16, 2003) collectively.

u. "Rhode Island Housing" shall mean the Rhode Island Housing and Mortgage Finance Corporation.

v. "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

w. "Section 8 subsidized" shall mean a federal rent subsidy program that assists low-income families, the elderly and the disabled to rent housing in the private market.

x. "Settling Defendant" shall mean Brook Village Associates Limited Partnership, a Rhode Island limited partnership.

y. "Site" shall mean the Centredale Manor Restoration Project Superfund Site, consisting of an approximately 9-acre source area located at 2072 and 2074 Smith Street in North Providence, Rhode Island, and all areas where contamination from that source area has come to be located, or from which that contamination came. The location of the Site is generally shown on the map included in Appendix A.

z. "State" or "State of Rhode Island" shall mean the State of Rhode Island and Providence Plantations, including the Rhode Island Department of Environmental Management.

aa. "Trustees" shall mean the Secretary of the Department of the Interior, or his/her designee, and the Administrator of the National Oceanic and Atmospheric Administration, or his/her designee.

bb. "United States" shall mean the United States of America, on behalf of NOAA, DOI and the Administrator of EPA, including their departments, agencies and instrumentalities.

## V. STATEMENT OF PURPOSE

4. By entering into this Consent Decree, the mutual objective of the Parties is for Settling Defendant to make cash payments pursuant to Section VI to resolve its liability for the Site as provided in the Covenant Not to Sue by Plaintiffs in Section VIII, and subject to the Reservation of Rights in Section IX.

## VI. PAYMENTS BY SETTLING DEFENDANT

5. Within 90 days after the Effective Date of this Consent Decree (the "Payment Date"), Settling Defendant shall close the new Preservation Refinancing mortgage transaction with Rhode Island Housing and, with the proceeds of such mortgage refinancing, shall pay a total settlement amount of $1,451,936.00, of which (a) $150,000 shall be placed in an escrow account, as provided in Paragraph 10; (b) $1,197,781.12, or 92 percent of the remaining amount, shall be paid to the United States, as provided in Paragraphs 6 and 7; and (c) $104,154.88, or 8 percent, shall be paid to the State, as provided in Paragraph 9. If the Effective Date of this Consent Decree is more than six months after Settling Defendant signs this Consent Decree, then the total settlement amount of $1,451,936 and the settlement payments set forth in (b) and (c) of this Paragraph shall be adjusted, if necessary, to reflect the maximum equity available from the

Preservation Refinancing mortgage transaction, consistent with federal and state requirements, using the Prevailing Interest Rate in effect at the time of the closing.

6. From the total payment to be made to the United States, $68,450.00 shall be paid on behalf of DOI for Natural Resource Damages, including past and future Costs of Assessment. Payment shall be made by the Payment Date by Fedwire Electronic Funds Transfer to the DOJ account in accordance with current electronic funds transfer procedures, referencing DOJ Case Number ______, and NRDAR Account Number 14X5198. Payment shall be made in accordance with instructions provided, upon request, to the Settling Defendant by the Financial Litigation Unit of the United States Attorney's Office for the District of Rhode Island following lodging of the Consent Decree. Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited on the next business day. Settling Defendants shall send notice that such payment has been made to the persons listed in Section XV (Notices and Submissions) for notice to DOJ, and to Department of the Interior, Natural Resource Damage Assessment and Restoration Program, Attn: Restoration Fund Manager, 1849 C Street, NW, Mailstop 4449, Washington, D.C. 20240. The notice shall state that the payment is for reimbursement of Costs of Assessment for natural resource damage assessment and for Natural Resource Damages with respect to the Centredale Manor Restoration Project Superfund Site, located in North Providence, Rhode Island, and include the DOJ Case Number ______, the Site name, the Site location, and the name of the Settling Defendant making the payment.

7. The remaining payment to be made to the United States shall be paid on behalf of EPA and shall be deposited in the Centredale Manor Restoration Project Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site. This payment shall be made by the Payment Date by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing USAO File Number ___________, the EPA Region and Site Spill ID Number RID981203755, and DOJ Case Number __________. Payment shall be made in accordance with instructions provided to Settling Defendant by the Financial Litigation Unit of the U.S. Attorney's Office in the District of Rhode Island following lodging of the Consent Decree. Any payment received by the Department of Justice after 4:00 p.m. Eastern Time shall be credited on the next business day. Except as provided in Paragraph 10 of this Consent Decree, and subject to Section XII of this Consent Decree, Settling Defendant shall have no further obligation to conduct or finance response actions in connection with the Removal Orders.

8. At the time of payment to EPA, Settling Defendant shall send notice that payment has been made to EPA and DOJ in accordance with Section XV (Notices and Submissions) and to George Hoxie at EPA New England, One Congress Street, Suite 1100 (MCO), Boston, Massachusetts 02114-2023.

9. Payment to the State pursuant to Paragraph 5 shall be in the form of a certified check. The check shall be made payable to "General Treasurer - State of Rhode Island (for deposit in the Environmental Response Fund)," and shall only be used by the State for the benefit of and/or for use at the Site. By the Payment Date, Settling Defendant shall send the check to the State representative listed in Section XV (Notices and Submissions).

10. In addition to the payments to be made to the United States and the State, Settling Defendant shall deposit, by the Payment Date, $150,000 to be held by Settling Defendant in an escrow account (the "Removal Orders Reserve Account") pursuant to an escrow agreement approved by EPA. Payments may be made by Settling Defendant from the Removal Orders Reserve Account with EPA approval, which shall not be unreasonably withheld, for payment of Settling Defendant's costs and expenses incurred or required to be paid after the Payment Date in connection with performance of its obligations under the Removal Orders. Any funds in the Removal Orders Reserve Account not so obligated for payment of Settling Defendant's obligations under the Removal Orders 30 days after EPA certifies the completion of all three (3) Removal Orders or June 30, 2010 (whichever is earlier), shall be distributed to the Centredale Manor Restoration Project Special Account established pursuant to Paragraph 7 of this Consent Decree. Except as provided in this Paragraph 10, and subject to Section XII of this Consent Decree, Settling Defendant shall have no further obligation to conduct or finance response actions in connection with the Removal Orders.

11. It is acknowledged that Settling Defendant has commenced and is prosecuting a claim for insurance coverage pertaining to the Site. That claim for insurance coverage has been asserted against Travelers Indemnity Company, Travelers Indemnity Company of America, Cambridge Mutual Fire Insurance Company, and Employers Insurance of Wausau, and is pending before the Complex Litigation Docket of the Connecticut Superior Court, Docket No. (X02) CV 01 0166576 S (the "Insurance Coverage Case").

12. The United States shall be entitled to receive 75 percent of the indemnity portion of any insurance recoveries, minus reasonable attorney fees and litigation expenses, whether through settlement or judgment, with respect to the Insurance Coverage Case, and the Settling Defendant shall be entitled to receive 25 percent. Any payments due to the United States under this Paragraph shall be made within 30 days of receiving such recoveries in the manner described in Paragraph 7 of this Consent Decree. Settling Defendant shall have the unrestricted right to control the prosecution, settlement and withdrawal of the Insurance Coverage Case, provided that it does so in a reasonable manner.

## VII. FAILURE TO COMPLY WITH CONSENT DECREE

13. Interest on Late Payments. If Settling Defendant fails to make any payment required by Paragraphs 5, 6, 7, 9, 10 and 12 by the required due date, Interest shall continue to accrue on the unpaid balance through the date of payment.

a. Interest due pursuant to this Paragraph shall be paid to the entity to which the unpaid payment is owed.

b. Settling Defendant shall make all payments required by this Paragraph in the same manner as set forth in the provisions of Paragraphs 6, 7 and 9 above.

14. Stipulated Penalty.

a. If any amounts due under Paragraphs 5, 6, 7, 9, 10 and 12 are not paid by the required due date, Defendant shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 13, $250 per violation per

day that such payment is late. Stipulated penalties for failure to comply with Paragraphs 5, 6, 7, 10 and 12 shall be paid 100 percent to the United States, and stipulated penalties for failure to comply with payment requirements of Paragraph 9 shall be paid 100 percent to the State.

1. Stipulated penalties owed to EPA are due and payable within 30 days after the date of the demand for payment of the penalties by EPA. All payments to EPA under this Paragraph shall be identified as "stipulated penalties" and shall be made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund." The check, or a letter accompanying the check, shall reference the name and address of the party making payment, the Site name, the EPA Region and Site Spill ID Number RID981203755, and DOJ Case Number _______, and shall be sent to:

Region 1
U.S. Environmental Protection Agency
Attn. Hazardous Substance Superfund Accounting
P.O. Box 360 197M
Pittsburgh, PA 15251

At the time of each payment, Settling Defendant shall send notice that payment has been made to EPA and DOJ in accordance with Section XV (Notices and Submissions) and to George Hoxie at EPA New England, One Congress Street, Suite 1100 (MCO), Boston, Massachusetts 02114-2023.

2. Stipulated penalties owed to DOI are due and payable within 30 days after the date of the demand for payment of the penalties by DOI. All payments to DOI under this Paragraph shall be identified as "stipulated penalties" and shall be made in the same manner as set forth in Paragraph 6. At the time of each payment, Settling Defendant shall send notice that payment has been made to DOI and DOJ in accordance with Section XV (Notices and Submissions).

3. Stipulated penalties owed to the State are due and payable within 30 days after the date of demand for payment of penalties by the State. All payments to the State under this Paragraph shall be identified as "stipulated penalties" and shall be made in the same manner as set forth in Paragraph 9. At the time of payment, Settling Defendant shall send notice that payment has been made to the State in accordance with Section XV (Notices and Submissions).

b. Penalties shall accrue as provided in this Paragraph regardless of whether EPA, DOI or the State has notified Settling Defendant of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

c. In the event that the closing of the Preservation Refinancing mortgage transaction is delayed as a result of causes beyond the control of Rhode Island Housing and the

Settling Defendant, the time for performance of the Settling Defendant's obligations under this Consent Decree shall be extended by an amount of time equal to the delay.

15. If the United States or the State brings an action to enforce this Consent Decree, Settling Defendant shall reimburse the United States and the State for all costs of such action, including but not limited to costs of attorney time.

16. Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

17. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse Settling Defendant from payment as required by Section VI or from performance of any other requirements of this Consent Decree.

**VIII. COVENANT NOT TO SUE BY PLAINTIFFS**

18. Except as specifically provided in Section IX (Reservation of Rights), the United States covenants not to sue or to take administrative action against Settling Defendant, its current and former general and limited partners, and their officers, directors, heirs, successors and assigns, but only to the extent that the alleged liability of the partner, officer, director, heir, successor or assign is based solely on its status as and in its capacity as a partner, officer, director, heir, successor or assign of Settling Defendant, and Rhode Island Housing, pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and RCRA § 7003, 42 U.S.C. § 6973, with regard to the Site. Except as provided in Paragraph 10, and subject to Section XII of this Consent Decree, the United States further covenants not to sue or to take administrative action against Settling Defendant, its current and former general and limited partners, and their officers, directors, heirs, successors and assigns, but only to the extent that the alleged liability of the partner, officer, director, heir, successor or assign is based solely on its status as and in its capacity as a partner, officer, director, heir, successor or assign of Settling Defendant, with respect to the Removal Orders. These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree. With respect to present and future liability, this covenant not to sue shall take effect upon receipt by EPA and DOI of all amounts required by Section VI (Payment by Settling Defendant) and any amount due under Section VII (Failure to Comply with Consent Decree). This covenant not to sue is also conditioned upon the veracity and completeness of the financial and insurance information provided to EPA by Settling Defendant. If such financial or insurance information is subsequently determined by EPA to be false or, in any material respect, inaccurate, Settling Defendant shall forfeit all payments made pursuant to this Consent Decree and this covenant not to sue and the contribution protection in Paragraph 28 shall be null and void. Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' right to pursue any other causes of action arising from Settling Defendant's false or materially inaccurate information.

19. Except as specifically provided in Section IX, the State covenants not to sue or to take administrative action against Settling Defendant, its current and former general and limited partners, and their officers, directors, heirs, successors and assigns, but only to the extent that the alleged liability of the partner, officer, director, heir, successor or assign is based solely on its status as and in its capacity as a partner, officer, director, heir, successor or assign of Settling Defendant, and Rhode Island Housing, with regard to the Site, pursuant to Section 107(a) of CERCLA, 42 U.S.C. §§ 9607(a), RCRA §7001 et seq., 42 U.S.C. § 6971 et seq., the Federal Water Pollution Control Act §301 et seq., 33 U.S.C. §1311 et seq.; the Rhode Island Industrial Property Remediation and Reuse Act, R.I. Gen. Laws Ch. 23-19.14 et seq.; the Rhode Island Hazardous Waste Management Act , R.I. Gen. Laws Ch. 23-19.1 et seq.; the Rhode Island Oil Pollution Control Act, R.I. Gen. Laws Ch. 46-12.5 et seq., the Rhode Island Groundwater Protection Act , R.I. Gen. Laws Ch. 46-13.1 et seq.; the Rhode Island Water Pollution Act, R.I. Gen. Laws Ch. 46-12 et seq.; and pursuant to other similar state law or common law regarding hazardous waste, environmental pollution, nuisance, or trespass. With respect to present and future liability, this covenant not to sue shall take effect upon receipt by the State of all payments required by Section VI (Payment By Settling Defendant) and any amount due under Section VII (Failure to Comply with Consent Decree). The State's total damages and/or response costs recoverable from other entities with respect to the Site shall be reduced by the amount of the payment received from Settling Defendant in accordance with Section VI of this Consent Decree.

## IX. RESERVATION OF RIGHTS

20. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the Covenant Not to Sue by Plaintiffs in Paragraph 18. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant, with respect to:

a. liability for failure of Settling Defendant to meet a requirement of this Consent Decree;

b. liability for damages, including the costs of an assessment of damages, under Section 107 CERCLA, 42 U.S.C. § 9607, for injury to, destruction of, or loss of natural resources due to the past, present, or future disposal, release, or threat of release of hazardous substances outside of the Site;

c. criminal liability;

d. liability, based on Settling Defendant's future transportation, treatment, storage, or disposal, or the future arrangement for the transportation, treatment, storage, or disposal, of a hazardous substance or a solid waste at or in connection with the Site, after signature of this Consent Decree by Settling Defendant;

e. liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant by Settling Defendant outside of the Site; and

f. liability for injuries to natural resources resulting from future operations or activities of Settling Defendant at the Site.

21. The State reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the Covenant Not to Sue by the State in Paragraph 19. Notwithstanding any other provision of this Consent Decree, the State reserves all rights against Settling Defendant with respect to:

a. liability for failure to meet a requirement under this Consent Decree;

b. liability for damages, including the costs of an assessment of damages, under Section 107 CERCLA, 42 U.S.C. § 9607, for injury to, destruction of, or loss of natural resources due to the past, present, or future disposal, release, or threat of release of hazardous substances outside of the Site;

c. criminal liability;

d. liability based on Settling Defendant's future transportation, treatment, storage, or disposal, or the future arrangement for the transportation, treatment, storage, or disposal, of a hazardous substance, pollutant or contaminant at or in connection with the Site, or future violations of law (including common law) by Settling Defendant unrelated to the contamination at or from the Site, after signature of this Consent Decree;

e. liability arising from past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant by Settling Defendant outside of the Site; and

f. liability for injuries to natural resources resulting from future operations or activities of Settling Defendant at the Site.

22. Notwithstanding any other provision of this Consent Decree, the United States and the State reserve, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the financial or insurance information provided by Settling Defendant, or the financial or insurance certification made by Settling Defendant in Paragraph 40, is false or, in any material respect, inaccurate.

## X. COVENANTS BY SETTLING DEFENDANT

23. Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States or the State, or their contractors or employees, with respect to the Site or this Consent Decree, including but not limited to:

a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b. any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

c. any claim against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to the Site.

Except as provided in Paragraph 25 (Waiver of Claims) and Paragraph 30 (Waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraph 20 (b) – (f), but only to the extent that Settling Defendant's claims arise from the same response action or response costs that the United States is seeking pursuant to the applicable reservation.

24. Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

25. Settling Defendant agrees not to assert any CERCLA claims or causes of action that it may have for all matters relating to the Site, including for contribution, against any other person. This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against Settling Defendant.

26. Settling Defendant agrees that it will not sell, assign, transfer or exchange the Property, unless the transferee agrees, as part of the transfer, to use the Property as affordable housing or, if approved by Rhode Island Housing, as an affordable assisted living facility, for the balance of the time period specified in Paragraph 33 below and to be bound by the access and institutional controls provisions in Section XII. In the event of such a transfer of the Property, or any portion thereof, Settling Defendant shall notify EPA and DOJ within 30 days before the closing of the transfer and shall provide EPA and DOJ with a copy of the sale agreement within that same time period. Notwithstanding any transfer of the Property, or a portion thereof, Settling Defendant shall continue to be bound by all the terms and conditions, and subject to all the benefits, of this Consent Decree. Nothing in this Paragraph obligates Settling Defendant to, or prohibits Settling Defendant from, transferring the Property or any portion thereof.

## XI. EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

27. Except as provided in Paragraphs 18, 19, 25 and 28, nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Decree may have under applicable law. Except as provided in Paragraph 25, the Parties expressly reserve any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which they may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

28. The Parties agree, and by entering this Consent Decree this Court finds, that Settling Defendant, its current and former general and limited partners, and their officers, directors, heirs, successors and assigns, but only to the extent that the alleged liability of the partner, officer, director, heir, successor or assign is based solely on its status as and in its capacity as a partner, officer, director, heir, successor or assign of Settling Defendant, and Rhode Island Housing are entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in this Consent Decree. Further, the State and Settling Defendant agree that Settling Defendant, its current and former general and limited partners, and their officers, directors, heirs, successors and assigns, but only to the extent that the alleged liability of the partner, officer, director, heir, successor or assign is based solely on its status as and in its capacity as a partner, officer, director, heir, successor or assign of Settling Defendant, and Rhode Island Housing are entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims to the extent provided by State statutory and common law for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, and any activities or costs related to any damages to natural resources at or in connection with the Site by the United States, the State of Rhode Island, or any other person. The "matters addressed" in this Consent Decree do not include those response costs or response actions as to which the United States or the State has reserved its rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States or the State asserts rights against Settling Defendant coming within the scope of such reservations.

29. To the extent permitted by Paragraph 25, Settling Defendant agrees that, with respect to any suit or claim for contribution brought by it for matters related to this Consent Decree, it will notify EPA, DOJ, DOI, NOAA and the State in writing no later than 60 days prior to the initiation of such suit or claim. Settling Defendant also agrees that, with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify EPA, DOJ, DOI, NOAA and the State in writing within 10 days of service of the complaint or claim upon it. In addition, Settling Defendant shall notify EPA, DOJ, DOI, NOAA and the State within 10 days of service or receipt of any Motion for Summary Judgment, and within 10 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

30. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or for damages to natural resources, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata,* collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiffs set forth in Section VIII.

## XII. ACCESS AND INSTITUTIONAL CONTROLS

31. If the Site, or any other property where access and/or land/water use restrictions are needed to implement response activities at the Site, is owned or controlled by Settling Defendant, Settling Defendant shall:

a. Commencing on the date of lodging of this Consent Decree, provide the Respondents to the Removal Orders and the United States and its representatives, including contractors of EPA, with access at all reasonable times to the Site, or such other property within its ownership or control, for the purpose of conducting any response activity related to the Site, including, but not limited to, the following activities:

1. Monitoring, investigation, removal, remedial or other activities at the Site;

2. Verifying any data or information submitted to the United States;

3. Conducting investigations relating to contamination at or near the Site;

4. Obtaining samples;

5. Assessing the need for and/or planning additional response actions at or near the Site;

6. Implementing additional response actions at or near the Site;

7. Inspecting and copying records, operating logs, contracts, or other non-privileged documents maintained or generated by Settling Defendant or its agents, consistent with Section XIII (Access to Information);

8. Assessing Settling Defendant's compliance with this Consent Decree;

9. Determining whether the Site or Property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree; and

10. Ongoing response actions at the Site pursuant to the Removal Orders.

b. Commencing on the date of lodging of this Consent Decree, maintain the Property in a manner appropriate for a residential apartment complex (including standard landscaping activities) and refrain from using the Site or Property in any manner that would interfere with or adversely affect the implementation, integrity or protectiveness of any removal or remedial measures performed at the Site; and

c. If EPA so requests, execute and record with the Records of Land Evidence of the Town of North Providence, in Providence County, State of Rhode Island, an easement, running with the land, that (i) grants a right of access for the purpose of conducting response activities at the Site, and (ii) grants the right to enforce the land/water use restrictions or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the removal or remedial measures to be performed at the Property, provided that such easement shall not materially interfere with the current and future use of the Property for affordable housing. Settling Defendant shall grant such access rights and the rights to enforce the land/water use restrictions to one or more of the following persons, as determined by EPA (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Respondents to the Removal Orders, and their representatives, and/or (iv) other appropriate grantees. Settling Defendant shall, within 30 days of EPA's request, submit such easement to EPA for review and approval, and to Rhode Island Housing for its review and approval, which shall not be unreasonably withheld or delayed.

1. a draft easement that is enforceable under the laws of the State of Rhode Island, free and clear of all prior liens and encumbrances (except as approved by EPA), and acceptable under the Attorney General's Title Regulations promulgated pursuant to 40 U.S.C. § 255; and

2. current title insurance commitment or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, Settling Defendant shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment or report to affect the title adversely, record the easement with the Records of Land Evidence of the Town of North Providence, in Providence County, State of Rhode Island. Within 30 days of recording the easement, Settling Defendant shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If the easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

d. Absent an imminent and substantial endangerment, nothing in subparagraphs 31(a), (b) or (c) shall be construed to require Settling Defendant to take any action on the Property that would interfere with the current and future use of the Property as affordable housing.

32. If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement response activities at the Site, ensure the integrity and protectiveness thereof, or ensure non-interference

therewith, Settling Defendant shall cooperate with EPA's efforts to secure such governmental controls.

33. Within thirty (30) days after the closing of the Preservation Refinancing Mortgage described in Paragraph 5 of this Consent Decree, Settling Defendant will record with the Records of Land Evidence of the Town of North Providence, in Providence County, State of Rhode Island, an instrument, in a form acceptable to Rhode Island Housing and Plaintiffs, which will continue or restate as restrictions encumbering title to the Property for forty (40) years those restrictions currently of record which dedicate the use of the Property to affordable housing.

34. Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## XIII. ACCESS TO INFORMATION

35. Settling Defendant shall provide to EPA, upon request, copies of all non-privileged records, reports, or information (hereinafter referred to as "records") within its possession or control or that of its contractors or agents relating to activities at the Site, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Site.

36. Confidential Business Information and Privileged Documents.

a. Settling Defendant may assert business confidentiality claims covering part or all of the records submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b). Records determined to be confidential by EPA will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies records when they are submitted to EPA, or if EPA has notified Settling Defendant that the records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such records without further notice to Settling Defendant.

b. Settling Defendant may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege in lieu of providing records, it shall provide EPA with the following: 1) the title of the record; 2) the date of the record; 3) the name and title of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted. However, no records created or generated pursuant to the requirements of this or any other settlement with the United States shall be withheld on the grounds that they are privileged.

37. No claim of confidentiality shall be made with respect to any data, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other records evidencing conditions at or around the Site.

## XIV. RETENTION OF RECORDS

38. Until 10 years after the entry of this Consent Decree, Settling Defendant shall preserve and retain all records now in its possession or control, or which come into its possession or control, that relate in any manner to response actions taken at the Site or the liability of any person under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary.

39. After the conclusion of the document retention period in the preceding paragraph, Settling Defendant shall notify EPA and DOJ at least 90 days prior to the destruction of any such records, and, upon request by EPA or DOJ, Settling Defendant shall deliver any such records to EPA. Settling Defendant may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege, it shall provide EPA with the following: 1) the title of the record; 2) the date of the record; 3) the name, title, affiliation (e.g., company or firm), and address of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted. If a claim of privilege applies only to a portion of a record, the record will be provided to EPA in redacted form to mask the privileged portion only. Settling Defendant shall retain all records that it claims to be privileged until EPA has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendant's favor. However, no records created or generated pursuant to the requirements of this or any other settlement with the United States shall be withheld on the grounds that they are privileged.

40. Settling Defendant hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it has:

a. not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or other information relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site, and that it has fully complied with any and all EPA requests for information regarding the Site and Settling Defendant's financial circumstances pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927;

b. submitted to EPA Financial Information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the Financial Information was submitted to EPA and the time Settling Defendant executes this Consent Decree; and

c. fully disclosed the existence of any insurance policies that may cover claims relating to cleanup of the Site.

## XV. NOTICES AND SUBMISSIONS

41. Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give

notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DOJ, the State and Settling Defendant, respectively.

As to the United States:

As to DOJ:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # _______ )
P.O. Box 7611
Washington, D.C. 20044-7611

As to DOI:

Mark Barash
U.S. Department of the Interior
Office of the Solicitor
One Gateway Center
Suite 612
Newton Corner, MA 02158-2868

As to NOAA:

Gwendolyn A. Wilkie
United States Department of Commerce
National Oceanic and Atmospheric Administration
Office of General Counsel, Natural Resources Division
Gloucester, MA 01930-2298

As to EPA:

Anna Krasko
U.S. E.P.A - New England Region
One Congress Street Suite 1100 (HBO)
Boston, Massachusetts 02114-2023

As to the State:

Louis Maccaronè
Sanitary Engineer
Project Manager
RIDEM Office of Waste Management
235 Promenade Street
Providence, RI 02908

As to Settling Defendant:

Howard Castleman, Esq.
Murtha Cullina, LP
99 High Street
Boston, MA 02110

Colburn T. Cherney, Esq.
Ropes & Gray
One Metro Center
700 12th Street, NW
Suite 900
Washington, DC 20005-3948

## XVI. RETENTION OF JURISDICTION

42. This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVII. INTEGRATION/APPENDIX

43. This Consent Decree and its appendix constitute the final, complete and exclusive Consent Decree and understanding between the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree. The following appendix is attached to and incorporated into this Consent Decree:

"Appendix A" is a map of the Site

## XVIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

44. This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

45. If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XIX. SIGNATORIES/SERVICE

46. Each undersigned representative of Settling Defendant, the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of

Justice and the State certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

47. Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

48. Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. The Parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX. FINAL JUDGMENT

49. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between the United States and Settling Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 6th DAY OF November, 2006

Mary M. Lisi
United States District Judge

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. Brook Village Associates Limited Partnership, Civ. Act. No. ____________, relating to the Centredale Manor Restoration Project Superfund Site.

FOR THE UNITED STATES OF AMERICA

KELLY A. JOHNSON
Acting Assistant Attorney General
Environmental and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

HENRY S. FRIEDMAN
Senior Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

ROBERT CLARK CORRENTE
United States Attorney

By: ______________________
LUIS MATOS
Assistant United States Attorney
District of Rhode Island
Fleet Center, 50 Kennedy Plaza, 8th Floor,
Providence, Rhode Island 02903

Robert W. Varney
Regional Administrator
New England, Region 1
U.S. Environmental Protection Agency
One Congress Street, Suite 1100
Boston, MA 02114-2023

Eve S. Vaudo
Senior Enforcement Counsel
New England, Region 1
U.S. Environmental Protection Agency
One Congress Street, Suite 1100 (SES)
Boston, MA 02114-2023

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. Brook Village Associates Limited Partnership, Civ. Act. No. ___________, relating to the Centredale Manor Restoration Project Superfund Site.

FOR THE STATE OF RHODE ISLAND

______________________________
Patrick C. Lynch
Rhode Island Attorney General
150 South Main Street
Providence, RI 02903

______________________________
Frederick J. Vincent
Interim Director
Rhode Island Department of Environmental Management
235 Promenade Street
Providence, RI 02908-5767

______________________________
Bret Jedele
Staff Attorney
Rhode Island Department of Environmental Management
235 Promenade Street
Providence, RI 02908-5767

Date: ______

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. Brook Village Associates Limited Partnership, Civ. Act. No. ___________, relating to the Centredale Manor Restoration Project Superfund Site.

FOR THE STATE OF RHODE ISLAND

__________________________________
Patrick C. Lynch
Rhode Island Attorney General
150 South Main Street
Providence, RI 02903

Frederick J. Vincent
Frederick J. Vincent
Interim Director
Rhode Island Department of Environmental Management
235 Promenade Street
Providence, RI 02908-5767

__________________________________
Bret Jedele
Staff Attorney
Rhode Island Department of Environmental Management
235 Promenade Street
Providence, RI 02908-5767

Date: 1-19-05

THE UNDERSIGNED enters into this Consent Decree in the matter of United States v. Brook Village Associates Limited Partnership, Civ. Act. No. ____________, relating to the Centredale Manor Restoration Project Superfund Site.

FOR RHODE ISLAND HOUSING AND MORTGAGE FINANCE CORPORATION (RIHMFC)

Date: 1/19/05 ________________________________

Richard H. Godfrey, Jr.
Executive Director
Rhode Island Housing and Mortgage Finance Corporation
44 Washington Street
Providence, RI 02903

Agent Authorized to Accept Service on Behalf of RIHMFC:

Richard H. Godfrey, Jr.
Executive Director
Rhode Island Housing and Mortgage Finance Corporation
44 Washington Street
Providence, RI 02903

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Brook Village Associates Limited Partnership, Civ. Act. No. ___________, relating to the Centredale Manor Restoration Project Superfund Site.

FOR DEFENDANT BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP

Name: Samuel Ross,
Title: President of Brook Village Corporation, its General Partner
Address: 6 Faneuil Hall Marketplace
Boston, Massachusetts 02109-1620

Dated as of January 12, 2005

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: Samuel Ross,
Title: President of Brook Village Corporation, its General Partner
Address: 6 Faneuil Hall Marketplace
Boston, Massachusetts 02109-1620

Dated as of January 12, 2005

APPENDIX A


ROUTE 44 BRIDGE
BROOK VILLAGE
CENTREDALE RACEWAY
CAP AREA 2
CENTREDALE MANOR
CAP AREA 1
N
W
E
S
600 0 600 Feet
1 inch = 600 feet
ALLENDALE POND
ALLENDALE RACEWAY
ALLENDALE DAM
ALLENDALE MILL
LEE ROMANO FIELD
LYMANSVILLE POND
ASSAPUMPSETT BROOK
LEGEND
FEMA Flood Zones
100-year
500-year
outside 100 and 500 year
NOTES:
1) Plan not to be used for design
2) All locations to be considered approximate
Sources: RGIS, EPA, REAC, Lockheed Martin
LYMANSVILLE DAM
MANTON POND
SITE MAP
ENGINEERING EVALUATION/COST ANALYSIS
JOHNSTON/N. PROVIDENCE RHODE ISLAND
CENTREDALE MANOR RESTORATION PROJECT SITE
Figure 1-1B
TETRA TECH NUS, INC.